## Davies *versus* Morris.

1. Members of a church who have no direct personal interest in the matter, are competent witnesses in a suit in which the church or corporation is a party.

2. In the probate of a will, it appeared that the witnesses stated in relation to a will to which the testator had made *his mark*, that they saw the testator sign, seal, publish, pronounce, and declare the instrument as his will, and the name of the testator was signed to it, though a mark was affixed: as this court could not say on inspection that the witnesses did not see the testator sign it, such not being necessarily imported by the mark, it was *held*, that the probate of the will was *primâ facie* evidence, and that the instrument should have been received in evidence, subject to explanation.

ERROR to the Common Pleas of *Schuylkill county.*

This was a feigned issue to try the validity of the will of Benjamin Morris, deceased. In the issue, Rees Davies, executor of the will of Benjamin Morris deceased, was plaintiff, and Evan Morris was defendant. The will was admitted by the Register to probate on the 12th May, 1846, and again on the 2d June, 1846, after the executor had renounced.

In the will Benjamin Morris devised his larger dwelling-house in Minersville, to the Welsh Congregational or Independent Church, of Minersville; the property not to be sold, but the rents to be paid by the executors " to the official members of said church, to the end of being appropriated to the use of the said church." A smaller house and the one-half of the lot of ground on which it stood, he devised to the American Board of Commissioners for Foreign Missions, the property not to be sold, but the rents to be paid to " official members of said board." The other half of the lot he devised to the Independent Church aforesaid.

He nominated John J. Davies, and Rees Davies, as the executors of his will.

> " In testimony whereof, I, the said Benjamin Morris, to this my last will and testament, &c., do here subscribe my name and affix my seal, this second day of May, in the year of our Lord, one thousand eight hundred and forty six, &c.
>
> Signed,     BENJAMIN $\overset{\text{his}}{\bowtie}$ MORRIS.
>                              mark

" Signed, sealed, and declared by the said Benjamin Morris, to be his last will and testament, in presence of us, who at his re-

S

[Davies *v.* Morris.]

quest and in his presence, have subscribed our names as witnesses thereto.

Signed,            JOHN J. ⋈ DAVIES.
                                    mark

In the probate of May 12, 1846, it was stated that before the register personally came John J. Davies, the subscribing witness to the will, and also Roderick R. Williams, who deposed that they were both present and did see Benjamin Morris sign, seal, publish, pronounce, and declare the foregoing instrument of writing, as and for his testament and last will, &c., and that the said John J. Davies at the same time, and at the request of the said testator, and in his presence, and in the presence of the said R. R. Williams, subscribed his name by making his mark thereto as a witness, and that the said Roderick R. Williams was also requested by the said testator to sign his name thereto as a witness, and omitted to do so.

Sworn and subscribed.

Signed,            JOHN J. ⋈ DAVIES.
                                    mark
                   RODERICK R. WILLIAMS.

Subsequently John J. Davies renounced the executorship, and probate was again made on June 2, 1846, and it was stated that Davies and Williams were sworn, and stated that they were both personally present on the second day of May, 1846, and saw and heard Benjamin Morris, the testator, sign, seal, publish, pronounce, and declare the annexed instrument of writing, as and for his last will and testament, and that at the time of so doing he was of sound mind, memory, and understanding, to the best of their knowledge and belief, and that he, the said Benjamin Morris, the testator, requested these deponents to witness the said instrument of writing, as and for his last will and testament, and that thereupon the said John J. Davies, in the presence and at the request of the said Benjamin Morris, and in the presence of the said Roderick R. Williams, subscribed the said will as a witness thereto, by making his cross or mark thereto, he being unable to write.

                   JOHN J. ⋈ DAVIES.
                                    mark
                   RODERICK R. WILLIAMS.

Sworn and subscribed, the day and year aforesaid, before me,
                   SAMUEL GUSS, Reg'tr.

Endorsed Will of Benjamin Morris. Filed May 12, 1846.

On the trial of the issue of *devisavit vel non*, the plaintiff offered in evidence the probate of June 2, 1846. To which the defendant objected, and the court rejected the same.

By his will the decedent gives a dwelling-house "to the Welsh Congregational or Independent Church of Minersville, property not to be sold, but the rents arising from said house to be paid by

[Davies *v.* Morris.]

my (his) executors to the official members of said church, to the end of being appropriated to the use of the said church."

The plaintiff also offered John J. Davies as a witness, who was objected to and rejected on the ground of interest.

It appeared by his examination, on his *voire dire*, that he was a member of the Welsh Congregational Church of Minersville; *that he was not a trustee*, and did not hold any office; that the members contribute according to their own will; that the pews are free; that the witness has been in the habit of paying fifty cents a month for the support of the clergyman; that it runs from month to month; that he was one of the building committee; that the church is in debt about $1000, for which the *trustees* have given papers; that he had not promised to pay any of the remaining debt. "The trustees are chosen by the members of the church; when a vacancy occurs we elect one in his place. I gave $20 for building the church; I don't know how the present debt is to be paid; I was one of the building committee; the debt we owe is for building the church; the whole committee joined in the building; the building committee made the contract with the mechanics for the building; David Price took the contract, and I believe a portion of this debt is due him; I guess there was no written contract with him."

The plaintiff also offered Roderick R. Williams, the pastor of the congregation, who was objected to and rejected on the ground of interest. On his examination, on his *voire dire*, he testified as follows :—" I am pastor of this Welsh congregation, and have been for a little more than three years; I was pastor when this church was built; I was not one of the building committee; I am not a trustee; we have no by-laws; everything is passed by the congregation; my salary is paid by voluntary contribution; the society owes about $1000; I took an active part in getting subscriptions, and in having the church built; the building committee was elected by the congregation; I did not vote, but generally put questions to vote; I was present when the building committee was chosen, and I had no objection to the committee appointed; it was agreed by official members; I was to receive $24 every four weeks. Our officers are deacons, secretaries, trustees, and pastor. The builder said he would build for such a price, and this fact was stated to the society, and the society authorized the contract. Perhaps $200 are due Price; most of the balance of the debt is due members, who lent money to the society; they gave their private notes; it was understood the trustees were to find the money, and the society was to repay them; there was no formal agreement on the part of the society to refund the money; no note was given to Price; the understanding is that all are to be bound by a majority. The secretary keeps a roll of the members.

Cross-examined.—"John J. Davies was not a trustee, and did

[Davies *v.* Morris.]

not sign any of the notes; unless a member were to contribute what he was able he would be expelled; I consider myself liable to contribute according to my means; if this property is recovered it would increase my salary.

In chief:—"Price completed the church and furnished all; we have about two hundred members. * * * I have no other means of living but my salary; I don't know whether I shall be able to contribute any more; if I am, I shall."

The plaintiff then offered the said Roderick R. Williams as a witness, to the court and jury, to prove the execution of the will of the said Benjamin Morris; but the defendant objected to the witness, on the ground that he was interested in the result of the cause. The court (KIDDER, J.) rejected the witness, and exception was taken on the part of the plaintiff.

It was assigned for error:

1. The court erred in rejecting the probate of June 2, 1846, as mentioned in the first bill of exceptions.

2. The court erred in rejecting John J. Davies as a witness, as mentioned in the second bill of exceptions.

3. The court erred in rejecting Roderick R. Williams as a witness, as mentioned in the third bill of exceptions.

The case was argued by *Perkins*, for plaintiff in error.—The probate was not offered as *conclusive* evidence, but as part of the evidence in the case. It was *prima facie* evidence: 2 *Rawle* 178, Sholly *v.* Diller; 1 *W. & Ser.* 398, Loy *v.* Kennedy; 3 *Bin.* 498; 6 *Ser. & R.* 223.

2. Davies was competent. His interest consisted in the possible diminution of a fund to which it was supposed he was liable to contribute. If interested, the interest was too remote and contingent to affect his competency: 14 *Ser. & R.* 51–4; 1 *Pet. C. C. Rep.* 301; 16 *Ser. & R.* 195–6; 6 *W. & Ser.* 357–369; 3 *Barr* 342–5.

An honorary engagement which cannot be enforced at law will not render a witness incompetent: 4 *Ser. & R.* 227; 7 *Mass.* 398; 1 *Day* 35.

No expected participation in the benefits of a public benefaction is a valid objection to the competency of a witness: 9 *Pick.* 350–360.

*Hughes*, for defendant.—When a will is not signed by the testator, and is not in his handwriting, there must be proof by two witnesses that he knew the contents: Lewis *v.* Lewis, 6 *Ser. & R.* 489. A mark is insufficient, and so is the name of the testator written by another, unless written in accordance with the directions of the statute: 5 *Barr* 21, Asay *v.* Hoover; *Id.* 441.

[Davies *v.* Morris.]

Davies was incompetent. He was one of the building committee who contracted personally with Price, and is therefore personally liable. It is not correct that notes were given to Price, the builder. Williams expressly says, " no note was given to Price."

Williams was interested on another ground. He was the pastor, one of the " official members," as he himself testifies.

The property was devised to the executors to be rented, and the rents to be paid " to the official members of said church, to the end of being appropriated to the use of the said church." One of the most important uses of the church is to have a parson. The rents were directly applicable to the support of Mr. Williams, and the only legally certain salary he could receive. All else was voluntary. And he said, " If this property is recovered, it would increase my salary."

As to what interest is sufficient to disqualify a witness, see 5 *Ser. & R.* 370; 1 *P. S. R.* 173, 364, and 440; 2 *P. S. R.* 46; 5 *P. S. R.* 37–8; 4 *P. S. R.* 142; 7 *W. & Ser.* 394; 8 *W. & Ser.* 16.

It seems that members of municipal corporations were not competent witnesses, in a suit where the corporation was concerned, prior to the Acts of 27th March, 1823, and 16th April, 1840: 4 *Ser. & R.* 141; 12 *Ser. & R.* 110; 6 *W. & Ser.* 46.

But was the paper purporting to be a will, in fact a will? Could the issue have been sustained for the plaintiff below, even had the testimony of Davies and Williams been admitted as before the register? The deceased did not subscribe his name, nor any one else by his direction—merely his " mark." The Act of 27th January, 1848, intended to cure such a difficulty as this, so far as it is retrospective, is unconstitutional: Greenough *v.* Greenough, 11 *P. S. R.* 489.

The opinion of the court was delivered January 15, by

LEWIS, J.—This was an issue to try the validity of a paper purporting to be the will of Benjamin Morris. The instrument in dispute contained a devise of a " dwelling-house to the Welsh Congregation, or Independent Church of Minersville; the property not to be sold, but the rents to be paid by my executors to the official members of said church, to the end of being appropriated to the use of said church." Roderick R. Williams, the pastor, and John L. Davies, a member of the congregation, interested in establishing the paper, were offered as witnesses to prove the execution, but were rejected by the court on the ground of interest. In general, the members of *pecuniary* or *moneyed institutions*, such as banks, insurance and manufacturing companies, and the like, are not witnesses in favor of such corporations, because they are directly interested in the result. The property in controversy would go to swell their profits, and thus increase the dividends

[Davies *v.* Morris.]

payable to the members offered as witnesses.   But societies for *religious purposes* stand upon a different footing.   No dividends are payable to the members of such corporations.   They do not make merchandise of their religion, for the *pecuniary* profit of the members.  `Donations, bequests, and devises to them may increase their ability to pay their debts, but this does not create such a *direct* interest as to disqualify a member.   The liability of members of religious societies is in general voluntary, and the rule is so in the case before us.   It does not appear that the society is unable, independent of the property involved in this suit, to pay its debts; nor have we any assurance that the property, if recovered, would be applied to existing liabilities.   There is nothing to prevent its appropriation to *new* erections, or *new* expenditures, "for the use of the church."   Professor Greenleaf, in his work on Evidence, gives the rule correctly.   In section 333, he states that "members of *charitable* and *religious societies*, having no *personal* and *private interest* in the property holden by the corporation, are competent witnesses in any suit in which the corporation is a party."   As to what are called *quasi* corporations, or the civil divisions of the country, where the question to be decided involves an increase or diminution of the corporate means or funds, so as to add to or lighten the burden of taxation upon the individual, the English Courts have holden that his mere *liability to be rated,* constitutes an interest *too remote* and *contingent to operate as the ground of exclusion,* although it is said to be otherwise if he be *actually rated.*   4 *T. R.* 17, 19, 5 *Id.* 664, 667.   6 *Id.* 157.   In this country, where no one can be rated against his consent for the support of religion, there can be no ground for excluding members of churches or societies for worship, upon the ground of interest.

By the probate taken before the Register, it appears that the two witnesses state that they saw the testator "*sign,* seal, publish, pronounce, and declare," &c.   As the *name* of the testator appears to be *signed* to the instrument, the court cannot say, on inspection, that the witnesses did not see the testator *sign* it.   The addition of a "mark" does not necessarily import against the testimony of the witnesses, that the testator did not *sign* his name.   There may have been an inadvertence in the statement of the witnesses, or they may have considered the affixing of a mark as a *signing* of the will.   It is certain, however, that there was nothing upon the face of the paper, thus admitted to probate, which raised the question respecting the effect of a *mark,* when used instead of a *signature,* in the execution of a will; or which authorized the court to reject the probate as not even *prima facie* evidence.

The instrument, after probate, ought to have been received in evidence, subject to explanation; and the witnesses offered ought to have been admitted.   When the whole case shall be presented

[Davies *v.* Morris.]

to the court and jury, a proper decision can be made upon the validity of the instrument in dispute.

Judgment reversed and *venire de novo* awarded.