## McFerren *versus* Mont Alto Iron Co. *et al.*

1. In an action of trespass the defendants pleaded that the *locus in quo* was a private way which they used under a license and also that it had been reserved in a deed; the plaintiff alleged that the way reserved was in a different place from that claimed by the defendant. *Held*, that evidence that the way had been used by the public, although irrelevant as to license or reservation, was admissible to show its existence and location.

2. The plaintiff bought the lot over which the way passed from Bricker who had bought of Hughes; plaintiff had previously bought from Hughes an adjoining lot on which he alleged the way was when he bought. At the

[McFerren *v.* Mont Alto Iron Co,]

time of both sales Hughes owned land adjoining both lots; his successors in title claiming the right to use the way were the defendants; Hughes was dead at the trial. *Held*, that the plaintiff was competent, under the Act of April 15th 1869, to testify of transactions between himself and Hughes as to the lot he had purchased from Hughes.

3. The proviso of the Act of 1869 was intended to exclude parties to the transaction as witnesses in regard to it, where the opposite party is dead and his rights had become vested in others. The plaintiff was not a party to any transaction with Hughes in relation to the *locus in quo.*

4. Bricker not being a party to the suit was competent to testify for the plaintiff, of declarations of Hughes and transactions with him, at the time of his conveyance, in relation to the reservation of the road and change of its location.

5. Bricker would have been competent, before the Act of 1869, which is an enabling statute, and does not apply to a witness competent before its passage.

May 16th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1874, No. 58.

This was an action of trespass *quare clausum fregit,* brought February 5th 1872, by George McFerren, against The Mont Alto Iron Company, George B. Weistling and others.

The declaration was that the defendant broke and entered the plaintiff's close, broke down his fences, cut down and destroyed his timber trees, &c., &c.

The defendant pleaded: 1. "Not Guilty: 2. That the defendants entered by license from the plaintiff. 3. That the *locus in quo* had been owned by Holker Hughes, who on the 30th of May 1854, conveyed to Jacob Bricker by deed, in which Hughes reserved to himself, his heirs and assigns, the right to the use of a certain road over the land conveyed to Bricker; that the right passed from Hughes by deed to Mont Alto Iron Company, and the alleged trespasses were committed by the servants of the company over the way so reserved.

The road mentioned in the third plea passed over a field of about twelve acres belonging to the plaintiff. It had been part of the Mont Alto Furnace property, which consisted of a body of land of 10,000 acres or more, and which had belonged to J. Holker Hughes; on the 13th of March 1854, Hughes conveyed this field of twelve acres to Jacob Bricker, and on the 14th of January 1862, Bricker conveyed it to the plaintiff. The plaintiff alleged that the road of which the defendants claimed the use, was on another piece of land, containing about nine acres, which cornered with the twelve-acre field at its south-west corner, the north line of the nine acres extended forming the south line of the Bricker tract; the nine acres also had been part of the Mont Alto Furnace property, and had been conveyed by Hughes to the plaintiff in 1852. At and after it was so conveyed, there was a road

[McFerren *v.* Mont Alto Iron Co.]

through it which Hughes used, to go to what were called the "Pond Ore-banks:" his works being situate southwardly of this field and the ore-banks northwardly of it. The plaintiff further alleged that this road, after the purchase of the nine-acre field, was moved eastwardly to the line of the Bricker field and passed over the southwest corner near where it joined the nine-acre field. The road in dispute entered the Bricker field, at about the middle of its south line, from the property of the iron company and considerably to the east line of the nine-acre field and passed northeastwardly through the Bricker field into other property of the company. It was called the "Old Shirey road."

The case was tried January 28th 1874, before Hall, P. J.

The plaintiff gave in evidence a deed with general warranty, dated January 14th 1862, from Bricker to himself for the twelve acres; he then gave evidence that the whole field had been enclosed before the alleged trespass; that defendants had taken down the fences so as to pass over the road; and rested.

The defendants gave evidence of acknowledgments of plaintiff that the iron company had the right of way in dispute; that it was a plain, well-marked road; that it had been fenced up about 1857 or 1858.

John Sproul, a witness, having testified that he had known the road for over thirty years, the defendants proposed to show by him and others "that the road in dispute was used by the owners of the furnace property, and also by other persons of the neighborhood, for the entire period of which the witness speaks."

The counsel for the plaintiff objected to all evidence to show that the road in dispute was a public road, used by others than the employees and owners of the furnace, because the pleadings show that the defendants justify the entry upon the plaintiff's land under a special license from the plaintiff, and under a reservation in the deed from Hughes, the predecessor of the title to the furnace property, to Bricker, the predecessor of the title to the plaintiff's land.

The offer was admitted, and a bill of exceptions sealed.

They gave evidence in accordance with the offer, including evidence that the road had been used by persons in the neighborhood to reach public roads and other public places.

They then gave in evidence a deed dated March 13th 1854, from Hughes to Bricker, for the twelve acres; in the deed was contained the following clause:—

"Reserving, however, the road as it is and the right of ~~purchasing~~
<sub>on Hughes paying for same</sub>
all the ore raised on said land, to said John Holker Hughes and
∧
his successors, at Mont Alto Iron Works, ~~as also the right of way through said land.~~"

Above the signature of the witness was: " on the tenth line the word 'purchasing' erased before signing:"—

[McFerren *v.* Mont Alto Iron Co.]

The defendants having rested, the plaintiff in rebuttal gave evidence that at the time of the conveyance to Bricker the land was all in timber and unenclosed; that the timber was afterwards cut off and it was then enclosed; that the nine acres had been fenced previously; that there had been a road through that piece used by the defendants' predecessors to pass to the "Pond Ore-banks;" that about the time the Bricker field was fenced there was a road made between it and the nine-acre field; he gave evidence also to show that there was no well-marked road through the Bricker field where defendants claimed that it was, and that there had been roads all through that piece when it was in timber.

It was admitted that J. Holker Hughes was dead.

The plaintiff proposed to prove by his own testimony "that the time he bought the nine-acre field from Hughes there was a road passing through it; that when Hughes tendered witness the deed, he had a reservation of this road in the deed, and when witness saw it he refused to accept the deed, and then Hughes had the reservation erased, and the road was then changed to where it now is, between the Bricker lot and the nine-acre lot."

The evidence was objected to by the defendants, because, first, the road spoken of in the offer is not in dispute, and in no way relates to the case; and because it is proposed to prove a contract with Holker Hughes in his lifetime in relation to said road, and Hughes being dead, the witness is not competent to testify on the subject; and because the witness is not admissible to contradict, change or modify the deed, and because the evidence is irrelevant; and because the witness being the alienee of Jacob Bricker of the land over which the disputed road passes, is not a competent witness on the subject of this road, or in this case, Holker Hughes being dead, having died before this suit was brought."

PER CURIAM: "The thing in controversy in this suit is a right of way alleged to have been reserved by a contract between Holker Hughes and Jacob Bricker, which contract is evidenced by a reservation in the deed of conveyance from Hughes to Bricker. The witness (who is the plaintiff) is the vendee of Bricker, and claims the land free from the right of way. The defendant is the vendee of Hughes' adjoining property, and of his rights of way. We hold the plaintiff incompetent to prove matters occurring in the lifetime of H. Hughes, between Hughes and himself, because Hughes is dead. The evidence embraced in this offer is to this extent rejected."

A bill of exceptions was sealed.

The plaintiff having released Jacob Bricker from his liability on his covenant in the deed of January 14th 1862, offered in evidence his deposition, which contained the following:—

"I purchased a tract of land from Holker Hughes. (Deed of 1854 to deponent shown.) This is the deed for the land. (Looks

[McFerren *v.* Mont Alto Iron Co.]

at the erasures in the deed.) · When I bought the land from Hughes I was to pay him $87.50 per acre for 12 acres and 46 perches. There was some difficulty about judgment-liens, and no · deed was made at the time, but. he gave me a right to go on the land and cut timber (it was then all timber-land). After we surveyed it, he found out that he was shut up and had no road to the Pond Bank to get ore; that he was fenced up. Then he agreed, if I would let him pass through the corner of the field I bought from him, he would allow me the timber on the road that was on his land, to pass through on Holker's own land. When the deed was given I found these words, 'as also the right of way through said land.' When I discovered this, I would not lift the deed at all, and I paid the purchase-money, and cut some timber on the land. Holker Hughes ordered Thomas Wilson·to erase the words above quoted, leaving the deed as it now stands. This was before the execution of the deed, but am not certain. This was done, I think, before the deed was signed. It was done before it was acknowledged. I would not lift the deed at all with those words in. Hughes directed his manager, Thomas Wilson, to erase the words above mentioned. Then the deed was acknowledged shortly after and delivered to me as it is now. He was not fenced up at the time, but he found that he would be fenced up, and I gave him a road across the corner of the field upon which this alleged trespass was committed. The road that I gave him the right to use was not the road upon which the alleged trespass was committed. * * *

"At the time I bought it he found that the road would be fenced up. * * * I gave him the road across the corner of the field before I lifted the deed. I can't tell how long it was I gave him the road before I lifted the deed. He went through McFerren's piece of road before I gave him the road. * * * I took the timber that he gave me, and gave him the road across the corner of the field, which has been used ever since." * * *

The offer was objected to by the defendants because Bricker was "not a competent witness, the subject-matter of his testimony being about a contract alleged to have been made between him (the witness) and Holker Hughes about the matter in dispute. The said Holker Hughes having died about four years ago, this witness is not competent to testify of conversations and contracts made before the death of Holker Hughes, so far as they relate to this case; also, because he is not competent to contradict a written deed."

The court rejected that part of the deposition given above, "as it relates to the occurrences between Holker Hughes and Bricker concerning the subject matter in controversy in this suit." A bill of exceptions was sealed for the plaintiff.

The plaintiff's fourth point was :—

[McFerren *v.* Mont Alto Iron Co.]

" The defendants having claimed the right of entry upon this field by a special license from the plaintiff, and under an express reservation contained in the deed from Hughes to Bricker, and this being the only issue raised by the pleadings, there can be no defence made in this case of the trespass complained of, by showing that the public had acquired a prescriptive right to a road through the plaintiff's field, even should the jury believe the evidence does establish such a public right, and the court is respectfully requested to withdraw all evidence about this being a public road from the jury."

The court answered :—

" The counsel for defendants have not claimed that a public road by prescription exists. They claim under the reservation in the deed, and point to the use of the road by the furnace people and others, for years before the date of the deed, as evidence to indicate the road referred to in the deed, and this is the issue raised by the pleadings and which we submit to you."

The verdict was for the defendants.

The plaintiffs took out a writ of error and assigned for error,

1. Admitting the evidence of John Sproul and others, as mentioned in the first bill of exceptions.

2. Rejecting the testimony of the plaintiff, as mentioned in the second bill of exceptions.

3. Rejecting that portion of the deposition of Jacob Bricker, as mentioned in the third bill of exceptions.

4. The answer of the court to the plaintiff's fourth point.

*J. McD. Sharpe* (with whom were *W. S. Stenger* and *W. Reilly*), for plaintiff in error.—This road does not fall within the principle that when the owner has given permanence and an open manifest existence to an easement on his own land it continues unaffected by sale, &c., the land being unenclosed woodland at the time of the conveyance, and the road not necessary for the enjoyment of this property : Gale & Whatley on Easements 88. There were other roads by which he could reach his ore-banks. To show that the way was a public road required the plaintiff to meet an issue different from that raised by the pleadings.

The plaintiff was competent, not being the opposing contracting party to the assignor of the thing in action, to wit, Hughes; Bricker was that party and he was not party to the suit. An interpretation of the proviso in the 1st section of the Act of April 15th 1869, Pamph. L. 30, 1 Br. Purd. 624, pl. 16, is given in Karns *v.* Tanner, 16 P. F. Smith 297. Since that act all witnesses are primâ facie competent as regards interest and policy, and objections for these reasons should clearly appear: McClelland *v.* West, 20 P. F. Smith 183.

Bricker was not a party to the suit, and was therefore com-

petent: Craig *v.* Brendel, 19 P. F. Smith 153. If he was incompetent under the Act of 1869, and not being a party to the suit, if disqualified on the ground of interest, that was removed by the release from the plaintiff: Summers *v.* Wallace, 9 Watts 161; Goodman *v.* Losey, 3 W. & S. 528; Calhoun *v.* Hays, 8 Id. 127; Rhines *v.* Baird, 5 Wright 256; Haus *v.* Palmer, 9 Harris 298; Dayton *v.* Newman, 7 Id. 194; Forrester *v.* Kline, 14 P. F. Smith 29; Susquehanna Coal Co. *v.* Quick, 11 Id. 329; Thomas *v.* Maddan, 14 Wright 261.

*G. W. Brewer* (with whom were *H. Gehr* and *F. M. Kimmel*), for defendants in error.—The land was sold to Bricker, having at the time a plain open road over it necessary for other parts of Hughes's land; it was bought subject to the easement: Kieffer *v.* Imhoff, 2 Casey 438; Penna. R. R. *v.* Jones, 14 Wright 417; Phillips. *v.* Phillips, 12 Id. 178; Kirkhom *v.* Sharp, 1 Wharton 323; Cope *v.* Grant, 7 Barr 488; Seibert *v.* Levan, 8 Id. 383. As to the testimony of plaintiff and Bricker, they cited Karns *v.* Tanner, 16 P. F. Smith 297; Allum *v.* Carroll, 17 Id. 68.

Mr. Justice WILLIAMS delivered the opinion of the court, July 2d 1874.

If the purpose of the offer embraced in the first assignment was to establish the defendants' right to the use of the road in question, either under the alleged license or the reservation in the deed of Hughes to Bricker, then so much of the offer as relates to its use by other persons in the neighborhood was irrelevant; but if its purpose was to show the existence of the road, and that it was located where the defendants claimed the right to its use under the reservation, there was no error in its admission. Nor was there error in refusing to withdraw the evidence from the jury, as requested in the plaintiff's fourth point. The court instructed the jury in answer to this point, that "the defendants have not claimed that a public road exists by prescription. They claim under the reservation in the deed, and point to the use of the road by the furnace people and others, for years before the date of the deed, as evidence to indicate the road referred to in the deed, and this is the issue raised by the pleading which we submit to you." So far as the evidence tended to indicate the road referred to in the deed of Hughes to Bricker, it was clearly admissible, and, under the instructions of the court, this was the only purpose for which it was submitted to the jury.

The next assignment raises the question, whether the plaintiff was a competent witness: and if so, whether the facts proposed to be proved by him were material and relevant to the issue? He purchased the lot upon which the trespass is alleged to have been committed, from Bricker, to whom Hughes by deed dated March

13th 1854, conveyed it, "reserving, however, the road as it is." By a subsequent deed, dated August 1st 1864, Hughes conveyed the adjoining land, known as "the furnace property," to the defendants, "together with all and singular the buildings, improvements, * * * ways, &c., thereunto belonging, or in any wise appertaining." Under this deed the defendants claimed the right to the use of the way or road in question, alleging that it was the road reserved in the deed of Hughes to Bricker. The court rejected the plaintiff as incompetent to prove matters occurring between himself and Hughes, the latter having died before the trial. But was he an incompetent witness for the purpose for which he was offered? He was not called to testify to anything connected with the sale and conveyance of the lot to Bricker, upon which the trespass is alleged to have been committed, or in relation to the sale and conveyance of the furnace property to the defendants, under which the right of way is claimed. He was offered for the purpose of proving matters having no connection with either conveyance. He purchased from Hughes a lot containing nine acres adjoining the one sold to Bricker. Why was he not competent to prove that there was a road through "the nine-acre lot" when he bought it, and that it was then changed to its present location between "the Bricker lot" and "the nine-acre lot?" That there was such a road, and that its location was changed, were facts independent of the deed for the lot, and wholly unconnected with the contracts between Hughes and Bricker, and Hughes and defendants, which are involved in this action; facts which, if not true, could be disproved by persons in the neighborhood as readily as by Hughes himself, if he were living. Why, then, should the plaintiff's mouth be closed in regard to these matters, if Hughes was dead? And if not, why was he not equally competent to prove that, when Hughes tendered the deed for the lot it contained a reservation of the road, and that he refused to accept it, and then Hughes had the reservation erased? The defendants were not claiming a road through "the nine-acre lot." Why, then, was the plaintiff not competent to prove the facts for which he was offered? It is no answer to say that he was not competent because Hughes was dead. The act, allowing parties interested to be witnesses, rendered him a competent witness, unless he is disqualified by the proviso, which declares that the act shall not apply "where the assignor of the thing or contract in action is dead." If, in legal contemplation, Hughes is to be regarded as the assignor of the alleged right of way over "the Bricker lot," the plaintiff was not a party to the transaction, nor was he called to testify anything concerning it. Surely the proviso was not intended to exclude parties from being witnesses, where the assignor of the thing or contract in action is dead, if they were not parties to the transaction, and are not called to testify to anything that

[McFerren *v.* Mont Alto Iron Co.]

took place between themselves and the deceased assignor. If it was, then no ·party claiming title through or under a deceased grantor, however remote the conveyance, can be a witness where the land, or some estate in it, is the subject of the action. The proviso must have a reasonable interpretation, and it must not be so construed as to defeat the very purpose of the act. It was intended to exclude parties to the transaction from being witnesses in regard to it, where the opposite party is dead and his rights have become vested in others by his own act or by operation of law. But it never could have been intended to exclude persons who were not parties to the transaction, and who are not called to testify anything respecting it. The plaintiff was, therefore, a competent witness; but were the facts proposed to be proved by him, material and relevant to the issue? If there was a road through "the nine-acre lot," and it was changed to its present location between that lot and "the Bricker lot," because the plaintiff would not accept the deed tendered by Hughes reserving the road, what bearing have these facts on the question whether there was a road through the lot conveyed to Bricker called the "Old Shirey road," and whether it is the road referred to and intended to be reserved in the deed of Hughes to Bricker? Possibly the offer would have been admissible if it had been proposed to follow it with evidence showing that the road was changed to its present location before the execution and delivery of the deed to Bricker. But this was not a part of the offer, and as both deeds have the same date the presumption is that it was not the fact. If so, the offer was irrelevant, and the plaintiff has no right to complain of its rejection, though the reason assigned for it may have been erroneous. But there was error in rejecting the deposition of Josiah Bricker "so far as it relates to occurrences between Hughes and Bricker concerning the subject-matter in controversy in this suit." If Hughes, the grantor of Bricker, was dead, the latter was not a party to the suit. It is true that the plaintiff claimed title under him, but he had released him from all liability on the covenants in his deed, and, therefore, Bricker had no interest in the event of the suit. It is clear that he would have been a competent witness as the law stood prior to the passage of the act allowing parties to be witnesses, and it would be an utter perversion of its spirit and meaning to hold that he was disqualified by its provisions. It is an enabling, and not a restraining statute; and the proviso was not intended to apply to a person competent as a witness before the passage of the act, and therefore not within its provisions.

Judgment reversed, and *venire facias de novo* awarded.