## Groome's Estate

*Walter L. Sheppard,* for exceptants.

*R. Sturgis Ingersoll,* of *Ballard, Spahr, Andrews & Ingersoll,* contra.

STEARNE, J., June 23, 1939.—Decedent executed a pledge to a college, a corporation of the first class, not for profit. At the date of death the pledge, upon its face, was barred by the statute of limitations. The college, claimant, at the audit of the executor's account, sought to toll the statute by the testimony of two members, of-

ficers of the corporation. The auditing judge ruled that such witnesses were disqualified under the Act of May 23, 1887, P. L. 158, sec. 5(e), 28 PS §322, and dismissed the claim. He relied upon Aquetong Hall Assn. v. James, 100 Pa. Superior Ct. 440. The syllabus of the Aquetong case reads as follows:

"In a claim for rent by a corporation of the first class against a decedent's estate . . . the treasurer was not a competent witness to testify against the decedent's estate as to matters occurring in the latter's lifetime . . .".

That case was thereafter cited with approval by Judge Stadtfeld of the Superior Court, quoting the above syllabus: Broderick Co. v. Emert et al., 110 Pa. Superior Ct. 327, 332. This court, as presently constituted, in opinions cited the Aquetong case with approval: Deal's Estate, 1319 of 1934 (not reported), and Field's Estate, 34 D. & C. 468.

Exceptant is confronted by two horns of a dilemma. In order to effect the tolling of the statute, the acknowledgment of the debt and the promise to pay must be made *to the creditor or its duly authorized agent:* Miller's Estate, 9 D. & C. 670; Gillingham v. Gillingham, 17 Pa. 302; Spangler, Executrix, v. Spangler, 122 Pa. 358; Bahny v. Levy, 236 Pa. 348. If claimant concedes that the corporation's witnesses (members and officers of the college) are integral parts of the corporation itself, then decedent's acknowledgment and promise to pay was indeed made to the creditor. But claimant is then faced with the Aquetong case, which rules that these witnesses are incompetent. Its learned counsel seeks to drive between the horns. He maintains that what Judge Keller wrote in the Aquetong case was dictum, and not supported by the statutes and judicial decisions.

A majority of the court do not regard the decision written by Judge Keller in the Aquetong case as dictum. An examination of the record in that case reveals that the single assignment of error was to the ruling of the

trial judge that an officer of a corporation of the first class, not for profit, was a competent witness under the Act of 1887, supra. This was the sole issue presented to the appellate court. The Superior Court decided that such ruling was error and that the witness was *not* competent. It refused, however, to disturb the verdict, even though the ruling was wrong, because it was harmless error in the facts of that particular case. As the issue raised required a determination of the legal question, the words of the opinion writer cannot be regarded as dictum, even though the decision did not rest solely upon the principle enunciated. See 15 C. J. 952 §344:

"An adjudication on any point within the issues presented by the case cannot be considered a dictum. Accordingly, a point expressly decided does not lose its value as a precedent because the disposition of the case is based upon other grounds, even though, by reason of other points in the case, the result reached might have been the same if the court had held, on the particular point, otherwise than it did". See also Bell's Estate, 31 D. & C. 670.

It is argued that Judge Keller's use of the language "we would be inclined to hold" and also "even if wrongfully admitted . . . [it is] harmless error" emasculates the opinion of the force of a definitive decision upon the point of law in question. We think not, particularly since the *sole* assignment of error related to the question of the competency of the witness. Furthermore, the citation of the Aquetong case with approval by the Superior Court upon this principle, in a later decision (Broderick Co. v. Emert et al., supra) confirms our conclusion that the Superior Court regarded that it had so decided the question. As the Aquetong case stands unreversed, we could well dismiss the exceptions upon the theory of stare decisis.

The learned counsel for exceptant, however, maintains that (unlike the Aquetong case) the two witnesses, members and officers of this corporation, were not *adverse* witnesses within the meaning of the Act of 1887, supra,

and were therefore competent. He contends that the disqualifying ädverse interest must be *pecuniary;* that the corporation in the Aquetong case, supra, was an affiliate of a fraternal order; that members of incorporated fraternal orders, social clubs, beneficial associations, and the like, become owners of the assets upon dissolution; that therefore such members are financially interested in the corporation. Contradistinguished from such corporations are religious, literary, educational, or charitable corporations. In the latter corporations, upon dissolution, the assets are *not* divided among the members. These assets cannot be diverted from such uses: Nonprofit Corporation Law of May 5, 1933, P. L. 289, sec. 1001. Because the present college was a corporation wholly eleemosynary in character, it is argued that irrespective of the fact that the witnesses were members and officers of a corporation (the "surviving or remaining party"), and who actually made the alleged contract with decedent, the witnesses' lack of *pecuniary* interest renders their testimony competent. The Act of May 23, 1887, P. L. 158, sec. 5(e), provides:

"Nor, where any party to a thing or contract in action is dead . . . shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse . . . be a competent witness to any matter occurring before the death. . . ."

This act has been construed by the Supreme Court in Weaver, Exec., v. Welsh, 325 Pa. 571, 577, where Chief Justice Kephart has written:

". . . the controlling factor is clause (e), section 5, of the Act of May 23, 1887, P. L. 158, the purpose of which is obviously to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute: *Karns v. Tanner*, 66 Pa. 297 (decided under the Act of 1869, the forerunner of the Act of 1887). This clause has been

construed not merely to render the surviving party incompetent to testify concerning the precise transaction, but to testify to any fact occurring before the death of the decedent which bears upon it: *Swieczkowski v. Sypniewski*, 294 Pa. 323; *Uhl v. Nostoller*, 298 Pa. 124. But, to effect this disqualification, the interest of the surviving party must be adverse to that of the decedent. See *King v. Lemmer*, 315 Pa. 254; *Dillon's Estate*, 269 Pa. 234; *First National Bank of Bloomsburg v. Gerli*, 225 Pa. 256; *Edmundson's Estate*, 259 Pa. 429."

Perhaps the best illustration of the operation of the rule is observed in Edmundson's Estate, 259 Pa. 429, cited by the Chief Justice. There claimant offered evidence that claimant's mother had conveyed an interest in real estate to decedent upon decedent's promise to claimant's mother that decedent would pay or bequeath the proceeds of sale to claimant. Claimant's witness was her mother, who had made the contract with decedent. Her competency was objected to because she was the "surviving and remaining" party to the contract. Her competency was sustained, however, on the ground that (p. 437) "The disqualification is made to depend not only on the fact of being a remaining party but also of having an adverse interest".

There are very many cases in the books defining "adverse interest". It is conceded that in the varying circumstances pecuniary interest often becomes an important factor. Yet we do not deem this to be the *sole* factor.

Another term, "disinterested" witness, frequently appears in many decisions. This arises because the Act of April 26, 1855, P. L. 328, amended by Act of June 7, 1911, P. L. 702, and adopted by section 6 of the Wills Act of June 7, 1917, P. L. 403, required any bequest or devise for a religious or charitable use to be by will "attested by two credible, and, at the time, *disinterested* witnesses . . .". (Italics supplied.) This portion of the act was subsequently repealed by the Act of July 2, 1935, P. L. 573. The Act of 1887 is an *evidence* act, whereas

the Act of 1855 was a *mortmain* statute. However, the analogy in terms between "adverse" interest in the Act of 1887 and "disinterested" witness under the Act of 1855 was so closely allied that frequently, in the cases, these terms seem to have been inaccurately used interchangeably. No useful purpose will be served by collecting and discussing these decisions.

Were the present corporation claimant an individual there cannot be a shadow of doubt that such an individual claimant's testimony (being that of an adverse "surviving or remaining" party to the contract) would be incompetent. Two recent cases, following a long line of decisions, are Buttorff's Estate, 329 Pa. 561, and Gallagher, Admr., v. Rogan, 330 Pa. 545.

Here an eleemosynary corporation is the claimant. It seeks, as the "surviving or remaining" party to the contract, to establish a claim against the estate of the deceased, the other party thereto. It endeavors to do this by the testimony of two of its own members, who are officers, and who themselves made the contract with decedent. We are therefore faced with the legal problem concerning the status of these witnesses. Are the witnesses mere agents of the corporation, with no adverse interest, or are they integral parts of the corporation itself?

While a corporation has been long regarded through a fiction of law as a legal entity, Gibbs' Estate, 157 Pa. 59, the modern tendency has been to disregard this fiction when the interests of equity and justice require it. In such cases it has been said: " 'for purposes of equity, courts will look behind that artificial personality, and if need be, ignore it altogether and deal with the individuals who constitute the corporation' ": S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, 269, citing Kendall v. Klapperthal Co., 202 Pa. 596, 607. See also Duquesne Brewing Co., etc., v. Mazza, 30 D. & C. 389, 394, and Stony Brook Lumber Co. v. Blackman et al., 286 Pa. 305. When, therefore, we disregard the form and look to the substance, we find, as pointed out by Mr. Savidge, in Savidge on Corporations

(2d ed.), sec. 704, that the stockholders or members of the corporation constitute the corporate body itself. It follows, therefore, that the corporation is but a convenient form of an association of individuals to act together as a group. Its officers and directors are consequently representatives not only of the corporation, but of the stockholders or members collectively. Most of the cases disqualifying a stockholder but permitting a non-stockholding officer to testify, emphasize the financial interest of the stockholder. But the disqualification can just as logically be placed on the ground that the stockholder is really one of the co-owners of the corporation, who, with his associates, constitutes the corporation. In this regard, members of an eleemosynary corporation, which has no stockholders, are in the same category as stockholders in that they are the owners (with perhaps qualified title) of the corporation. The witnesses, whose testimony was excluded by the auditing judge, were at the same time both trustees and members of the corporation. As members they occupy precisely the same position as stockholders in a corporation for profit, of the second class, under the Act of April 29, 1874, P. L. 73. As co-owners of the corporation and its assets, they were essentially actual parties to the controversy and their interest as such undoubtedly adverse. While it may be true that upon liquidation of this particular form of corporation the assets would not be divided among the then members of the corporation as would be the case on the dissolution of other corporations, this fact does not make their ownership of the corporation any the less real, for they control its destiny, property, and affairs.

Reflection clearly demonstrates that the fundamental legal philosophy behind the Act of 1887, supra, is to prevent a living person, possessing an adverse interest, from testifying against a decedent's estate, when the living person and decedent were the parties to the contract. In such a situation, without the protection of the statute, the estate would be at the mercy of an interested witness.

A person may have no direct *pecuniary* interest as a member of an eleemosynary corporation, yet membership or directorship therein may be of tremendous *indirect* personal and financial benefit to him. It would appear a most dangerous principle to permit a member and officer of an eleemosynary corporation to testify on behalf of the corporation, concerning the terms of a contract between the corporation and decedent, especially, as in this case, between the witnesses themselves and the decedent. The whole estate could be sworn away, without the slightest ability to refute such testimony.

Were we to accept (which we do not) exceptant's theory that these witnesses are mere agents of the corporation and are, therefore, without adverse interests, claimant is again met with a most formidable barrier to a recovery. In order to toll the statute of limitations, the agents of the creditor must be *authorized* agents: Bahny v. Levy, supra; Spangler, Executrix, v. Spangler, supra; Gillingham v. Gillingham, supra; Miller's Estate, supra. These witnesses certainly were not *authorized* to collect this pledge from decedent. When engaged in the conversations with decedent they were not acting under specific authority from the corporation. Such action was no more *authorized* than if the witnesses had agreed, with decedent, to cancel or modify her original pledge. This alone is fatal to the allowance of the claim.

The exceptions are dismissed and the adjudication is confirmed absolutely.

KLEIN, J., dissenting.—The question raised by these exceptions is whether officers and directors of eleemosynary corporations are competent witnesses to testify in support of claims of the corporations against the estates of decedents or are disqualified by section 5(e) of the Evidence Act of May 23, 1887, P. L. 158. The learned auditing judge, relying principally upon Aquetong Hall Assn. v. James, 100 Pa. Superior Ct. 440 (1930), ruled that such witnesses were not competent to testify and ex-

cluded their testimony. I cannot agree with this ruling, nor with the majority opinion filed in this case sustaining the auditing judge.

In order properly to understand the problem before us, it is necessary to consider the development of this phase of the law of evidence in this State. Under the common law interest of a witness had always been recognized as a ground for the exclusion of his testimony whether he was an actual party to the litigation or merely one interested in the event of the suit: Wolf v. Carothers, 3 S. & R. 240 (1817); Bennett v. Hethington et al., 16 S. & R. 193 (1827). Although this rule of exclusion was said to be based upon public policy, it had its origin in the common law, in the presumption of want of integrity of those personally interested in the litigation.

In order to disqualify a witness it was early decided that he must have a legal, certain, and immediate pecuniary interest in the result of the issue or in the record as an instrument of evidence. Miller, in his interesting book, The Competency of Witnesses, states at page 21:

"It must be a *pecuniary* interest. With the single exception of the relation of husband and wife, no relation, however close or powerful in its influence, is sufficient to exclude, unless it involve a pecuniary interest; as was said by Gibson, C. J., in Bennett *v.* Hethington, 16 S. & R., 193: 'Although the case of the witness be, in every point and particular, the case of the party by whom he is called to testify; although he expects a benefit from the event; and, in short, although he be subject to as strong a *bias* as can influence the understanding and actions of man; *yet, if he be not implicated in the legal consequences of the judgment, he is competent.*'"

The Supreme Court reiterated this rule in somewhat different language in Braine v. Spalding, 52 Pa. 247 (1866), in which Mr. Justice Woodward said at page 248:

"It is only a fixed vested interest, that disqualifies. The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the

judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent: Greenleaf's Ev., vol. 1, §390."

See also Abrams v. Musgrove, 12 Pa. 292 (1849), Hatch v. Bartle, 45 Pa. 166 (1863), Dickson et ux. v. McGraw Brothers, 151 Pa. 98 (1892), Spotts' Estate, 156 Pa. 281 (1893), Sargeant v. National Life Ins. Co., etc., 189 Pa. 341 (1899), Joseph Horne & Co. v. Petty, 192 Pa. 32 (1899), and Dillon's Estate, 269 Pa. 234 (1920).

The application of this rule of exclusion greatly hindered the administration of justice, and in many cases led to harsh and unreasonable results. Because of this, the courts endeavored wherever possible to admit testimony and permit the objection to go to the credit rather than to the competency of the witness. However, the principle was so firmly entrenched in our law that it required legislative action to secure relief.

With a view to ameliorating this situation, the legislature, starting in 1705, passed a long series of individual acts attacking the problem piecemeal. The greatest step forward was made by the Act of April 15, 1869, P. L. 30, which abolished the rule of exclusion for interest in all civil proceedings. This act, however, reserved several exceptions, among which were actions by or against executors, administrators, or guardians and cases where the assignor of the thing or contract in action was dead.

All of the decisions construing this statute hold that it is an enabling and not a restraining act and that its purpose was manifestly to enlarge and not to restrain the admission of evidence. They also decide that no person competent before the passage of the act was rendered thereafter incompetent either by the words or by the spirit of the law: McFerren v. Mont Alto Iron Co. et al., 76 Pa. 180 (1874); Sheetz et al. v. Hanbest's Execs., 81 Pa. 100 (1876); Pratt v. Patterson, 81 Pa. 114 (1876); The American Life Insurance & Trust Co. v. Shultz, 82 Pa. 46 (1876).

However, it was soon apparent that this act did not entirely cure the evil and the legislature started afresh to treat the problem by passing individual acts. Thus, at almost every session of the legislature from 1870 to 1885, one or more such statutes was passed, culminating in the passage of the Act of May 23, 1887, P. L. 158, which is a codification of all of the earlier statutes. This act is still in force, and section 5(e) thereof is now before us for consideration.

This statute has likewise been held to be an enabling act, which should be construed liberally so as to give effect to its purpose. The decisions also clearly hold that it made no change in the laws existing prior to its passage and that it did not render any person incompetent who was previously competent: Dickson et ux. v. McGraw Brothers, supra; Brown's Estate, 131 Pa. Superior Ct. 463 (1938). And it is now well established that the competency of witnesses in civil cases is the rule and incompetency the exception and, further, that objections to the competency of a witness for interest should be discountenanced unless they clearly appear: Bates v. Carter Const. Co., 255 Pa. 200 (1916); Allen's Estate, 207 Pa. 325 (1904).

Having demonstrated that the Acts of 1869 and 1887 rendered no one incompetent who was competent prior thereto, we must examine the state of the law as it existed previous to the passage of these acts to find the answer to the problem before us.

The question of the competency of members, stockholders, officers, and directors of corporations of both the first and second class had often been before our courts. Although stockholders of corporations for profit had been held incompetent to testify because of their pecuniary interest, this restriction had never been applied to officers who did not own stock.

In The Philadelphia Ins. Co. v. The Washington Ins. Co., 23 Pa. 250 (1854), the Supreme Court held that the president of an insurance company who was not a stock-

holder was a competent person to testify on behalf of the corporation. The court said at page 254:

"There is not a shadow of ground for the objection to Riche. Though the president of the company, he was not a stockholder nor party to the record. Having no necessary interest in the event, he was competent, and his credibility was for the jury."

This same conclusion was reached by the Supreme Court subsequent to the passage of the Acts of 1869 and 1887 in Sargeant v. National Life Ins. Co., etc., 189 Pa. 341 (1899), and Gantt v. Cox & Sons Co., 199 Pa. 208 (1901).

Following the same line of reasoning, the Supreme Court has decided that agents and managers of corporations who are not stockholders are disinterested persons and therefore competent witnesses: Canon v. Pennsylvania Trust Co., Admr., etc., 305 Pa. 422 (1931) ; Eaton v. New York Life Insurance Co. of N. Y., 315 Pa. 68 (1934).

The principle enunciated in the Aquetong case that a member and trustee of an incorporated beneficial association is an interested witness and therefore incompetent to testify is not new in our law. The same conclusion was reached in Washington Beneficial Society v. Bacher, 20 Pa. 425 (1853), and in Hamill v. Supreme Council, etc., 152 Pa. 537, 542 (1893).

However, the courts from early days have drawn a distinction between the competency of the members and directors of beneficial associations and those of charitable or religious societies. Although the former were held to be incompetent, the latter were declared fully qualified to testify. In Sorg v. The First German Evangelical St. Paul's Congregation, 63 Pa. 156 (1869), the court said at page 162:

"It was also objected that the witness was a trustee of the church and a member of the building committee. This appeared, indeed, by the written agreement. But

the trustees of charitable or religious societies, having no personal and private interest in the property holden by the corporation, are competent witnesses in any action in which the corporation is a party: 1 Greenl. on Ev. §333."

To the same effect see Shortz v. Unangst, 3 W. & S. 45 (1841), and Davies v. Morris, 17 Pa. 205 (1851).

When the question is studied more closely, we believe it becomes evident that the distinction we are discussing is logical and sound. In the first place, there is no doubt that a fraternal or beneficial association is not a charity: Sharp's Estate, 71 Pa. Superior Ct. 34 (1919) ; Channon's Estate, 266 Pa. 417 (1920). Its members have a property right in the assets of the association. Usually, in consideration of the payment of dues, they are entitled to certain definite privileges, which may· be purely social or may be of pecuniary value, such as insurance in case of death or benefits in case of illness. Often the members of beneficial associations also possess for themselves and the. members of their families other valuable privileges, such as burial benefits or the right to enter a hospital and orphanage, a home for the aged, or some similar institution maintained by the association. Members of these associations are also usually liable to assessments to meet deficits and, in the case of the dissolution of the organization, are entitled to a pro rata share of the distributive value of its property.

The members and directors of purely charitable or religious organizations, however, have no such privileges and cannot be said to have a pecuniary interest in the corporation. They are merely trustees of the institutions in their charge and cannot, under any circumstances, benefit personally from their membership. Furthermore, in the event of dissolution or liquidation of the corporations, the members could not profit personally, as the assets would either be transferred under the cy pres doctrine or escheated to the Commonwealth.

In the Aquetong case the claim was by a corporation of the first class which owned a building. It had no stockholders, but its membership was composed of the members of the Aquetong Lodge of Odd Fellows. Since it is clear that this corporation was not a charity, the analogy drawn by the Superior Court to Crozer's Estate, 296 Pa. 48 (1929), would be readily subject to misunderstanding unless the entire problem is carefully analyzed.

The expression "whose interest shall be adverse" found in the Act of 1887 has an entirely different connotation from the words "disinterested witnesses" found in section 11 of the Act of April 26, 1855, P. L. 328, and should not be confused therewith.

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. . . .

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects . . .": Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51.

It seems clear beyond doubt that both the Act of 1869 and the Act of 1887 were enacted for the express purpose of liberalizing harsh rules of evidence prohibiting interested persons from acting as witnesses. Both of these acts are enabling acts which must be construed liberally to give them full effect.

The Act of 1855, however, was passed to serve an entirely different purpose. It is entitled "An act relating to corporations and to estates held for corporate, religious and charitable uses." It is, in effect, a mortmain statute which prescribes the manner in which charitable corporations can receive and hold property in this State. Prior to its passage, members of charitable corporations

were permitted to act as subscribing witnesses to wills making gifts to the charity of which the witness was a member. See Davies v. Morris, supra, decided in 1851. Section 11 of the act is clearly designed to correct this situation. It obviously was not intended to change any other rule of evidence in force in this State.

This conclusion becomes apparent when the decisions construing this section of the act are examined. In Channon's Estate, supra, the Supreme Court said at page 422:

"In Kessler's Est., 221 Pa. 314, we call attention to the fact that (pp. 320, 321) 'the Act of 1855 is a remedial statute,' and the evil it has in mind is to prevent 'the importunities of designing persons,' interested in charities, at or near the time of the impending death of a testator." In Crozer's Estate, supra, the court said at page 53:

"While the disqualifying interest must be certain, it need not be a matter of personal benefit to the witness. To hold that those only were disqualified who had such an interest would practically nullify the statute, for who has a personal financial interest in a charity or church? The statute, as we have construed it, disqualifies those who have charge of and responsibility for the business and financial affairs of the institution."

I am convinced that the learned auditing judge erred in this case by following dictum in the Aquetong case which would appear to extend the scope of disqualification of witnesses in a manner not intended by the legislature. In so doing he has made the same error that I made in Deal's Estate, no. 1319 of 1934 (not reported), in which I said:

"Placing the most favorable light on the testimony of claimant's witnesses and allowing in evidence the testimony of witness Young, President of the Board of Trustees of Geneva College (although his testimony is inadmissible under the rule laid down in Aquetong Hall Assn. v. James, 100 Pa. Superior Ct. 440 (1930), we still

must hold that the claimant has failed to prove an enforcible claim."

I now believe that I was wrong in what I said in Deal's Estate and that Judge Sinkler was correct in admitting the testimony to which objection was made.

The application of the rule stated in the Aquetong case should not be broadened but must be limited to cases involving beneficial associations and the reference thereto in Broderick Co. v. Emert et al., 110 Pa. Superior Ct. 327 (1933), must also be regarded only as dictum. The rule cannot be applied in cases, such as the present one, involving charitable corporations.

Since officers and directors of eleemosynary corporations were not disqualified to act as witnesses because of interest prior to the passage of the Acts of 1869 and 1887, I am of the opinion that they are fully competent to testify today in support of a claim of the corporation against the estate of a decedent. I think the testimony of Mrs. Sarah Logan Wister Starr and Miss Vida Hunt Francis was admissible and should have been received by the learned auditing judge.

The facts in every case should determine whether or not the witness is adverse. Whereas in some, at least, of our purely charitable institutions, the contributors are the members of the body corporate, and the trustees and officers are elected by, from and among the contributors, such a trustee or officer would be regarded as not adverse but quite without gain or profit of any character. If his sole association with the institution is to give his money and services to it, he must be regarded as disinterested in any gainful sense. We must recognize that there are individuals who serve on boards for a humanitarian reason, without any ulterior motive.

I would, therefore, sustain the exceptions and refer the case back to the auditing judge in order that the testimony of these two witnesses might be considered.

Sinkler, J., joins in this dissent.