# Dillon's Estate.

*Evidence—Witness—Competency—Party dead—Principal and agent—Orphans' court—Findings—Review on appeal—Act of May 23, 1887, P. L. 158—Attorney—Contingent fee.*

1. Where one is authorized by another to act for her as an agent (the principal being disclosed) in employing an attorney on a contingent fee, the agent, after the principal's death, is a competent witness, under the Act of May 23, 1887, P. L. 158, for the attorney to prove the contract of employment. The agent's competency cannot be attacked because of a bare possibility that an action might be brought against her.

2. Where the orphans' court finds as a fact, upon competent evidence, that a decedent had made, in her lifetime, a contract of employment with an attorney-at-law based on a contingent fee, such finding will not be reversed on appeal, in the absence of manifest error.

*Contract—Compromise agreement—Settlement of dispute—Fraud.*

3. Where a dispute exists, and the parties enter into an agreement for the purpose of settling the dispute, they will be bound by the agreement; but if there has been a concealment amounting to a fraud, by one of the parties, the agreement will not be binding upon the other.

*Accord and satisfaction—Liquidated claim—Consideration.*

4. To validate an accord and satisfaction based on a liquidated claim that is due, there must be a proper consideration, with an assent or meeting of the minds of the parties. If the party receiving payment takes a less sum, he must understand that he takes it in full satisfaction of his claim, to constitute an accord and satisfaction.

Argued October 20, 1920.  Appeal, No. 243, Jan. T., 1920, by J. Allen Dillon, from decree of O. C. Fayette Co., Dec. T., 1918, No. 13, dismissing exceptions to adjudication in estate of Anna Lois Dillon, deceased.  Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.  Affirmed.

Exceptions to adjudication.  Before VAN SWEARIN-GEN, J., specially presiding.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions.  J. Allen Dillon, sole heir of Anna Lois Dillon, appealed.

*Errors assigned*, inter alia, were decree, quoting it, and the admission of evidence referred to in the opinion of the Supreme Court.

*Francis Shunk Brown*, with him *Vale L. Schekter, Henry F. Cochrane* and *Sterling, Higbee & Matthews*, for appellant.—A witness, attempting to fix liability upon the estate of a deceased person for an indebtedness incurred by the witness, by an allegation of authority as agent for the decedent to contract the debt, thereby herself avoiding liability, is adverse to the decedent and incompetent: Gunster v. Jessup, 196 Pa. 548; Wolff v. Wilson, 28 Pa. Superior Ct. 511; Hileman v. Falck, 263 Pa. 351; Skeen v. Moore, 120 Ga. 1057; Irwin v. Allen, 1 P. & W. 444; Sargeant v. Ins. Co., 189 Pa. 341; Catawissa R. R. v. Armstrong, 49 Pa. 186; Meason v. Kaine, 63 Pa. 335.

The evidence in support of the claim was palpably insufficient and the finding of the lower court was gross and palpable error: Comly's Est., 185 Pa. 209; Wall's App., 111 Pa. 460.

Where an attorney undertakes a matter upon a contingent fee, the death of the client terminates the relation as in any case of agency: Kern's Est., 176 Pa. 373; Blackstone v. Buttermore, 53 Pa. 266.

*John C. Bane*, with him *Linn V. Phillips*, for appellees.—Lena Gailey was a competent witness for the claimants: Braine v. Spalding, 52 Pa. 247; Scull v. Mason, 43 Pa. 99; Hatch v. Bartle, 45 Pa. 166; Dickson v. McGraw, 151 Pa. 98; Spotts's Est., 156 Pa. 281; Simons v. Vulcan O. & M. Co., 61 Pa. 202; Abrams v. Musgrove, 12 Pa. 292.

There is abundant evidence in the record to sustain the findings of the auditing judge, that the contract under which claim was made was entered into by decedent.

OPINION BY MR. JUSTICE KEPHART, December 31, 1920:

For some twenty years Mrs. Anna Dillon, an efficient nurse, lived with Alfred M. Fuller, a very wealthy citizen of Perryopolis, Fayette County, Pennsylvania, exercising supervision over the household and farm. She received no regular wages and Fuller many times expressed an intention to make ample provision for her. On one occasion, while undergoing an operation, he stated to attending physicians she should have a million dollars; he was worth from thirteen to fourteen millions. The services of Mrs. Dillon were invaluable to him and his relatives so regarded them. Nothing was done by way of a provision for her until 1915, sometime after the death of Fuller's wife.

Mrs. Dillon, then feeling the time opportune to have something definitely settled, consulted a Mr. Gailey, a justice of the peace. He advised her to secure the assistance of counsel. Fearing that the attorneys from her own county in some manner represented Fuller or his relatives, she asked Lena Gailey, daughter of the justice of the peace, to secure counsel for her. The name of Mr. Irwin, of the firm of Watson & Freeman, was suggested, but as Mrs. Dillon believed him to be interested in litigation in which the Fuller relatives were concerned, she objected to the selection. Mrs. Dillon could not leave her home to secure counsel elsewhere and asked Miss Gailey, who was a very intimate friend, to attend

to the matter, and if possible secure an attorney without subjecting her to the payment of a retaining fee. Miss Gailey undertook the negotiation and through a friend secured the services of Thomas E. Finley, a member of the bar of Allegheny County. He was asked if he could devise a plan to protect Mrs. Dillon under the conditions stipulated. Finley agreed to undertake the plan with the understanding that if nothing came of the writing he would charge no fee or a small one, but if, as a result of the paper he prepared, she should receive compensation, he was to be paid ten per cent of the amount. This arrangement was satisfactory to Mrs. Dillon and she directed him to draw the contract, which was accordingly done and sent by mail to Mrs. Dillon, who presented it to Fuller to sign. He at first declined to sign it, but later reconsidered his action and executed the paper September 3, 1915. It provided for the payment of $500,000 to Mrs. Dillon. About this time she discovered that the firm of Watson & Freeman did not represent the Fuller relatives as at first supposed, and wishing to make certain the agreement was well protected and to provide able counsel to prosecute her right in the event of any contest with the surviving relatives or claimants of Fuller, she again asked Miss Gailey, who was conducting all her negotiations, to see Irwin. This was done, a conference was arranged and held between Irwin, Finley, Miss Gailey and her friend, Gibson, when Irwin consented to go into the matter without charging a retaining fee and agreeing to share in the ten per cent commission on anything that should be recovered under the agreement. This was likewise satisfactory to Mrs. Dillon. It was determined a new agreement should be prepared and three copies were sent to Mrs. Dillon February 18th. Fuller refused to sign any of these papers. Later he conveyed to Mrs. Dillon a valuable piece of property in Roanoke, Va., from which she secured a rental of $3,000 a year, and she, fearing the conveyance of this property might interfere with the first paper signed by

Fuller, again sent Miss Gailey to consult with Irwin in relation to it. He agreed with Mrs. Dillon the conveyance of the Roanoke property should be explained, and prepared a contract which he forwarded to Mrs. Dillon on April 26, 1916. This contract recited the conveyance of the Roanoke property March 7, 1916, and that it was in addition to the amount to be paid under the agreement, namely, $500,000, subject to the condition that she should remain in his employ and continue to render services until his death. It was signed by Fuller and Mrs. Dillon.

Mrs. Dillon died September 15, 1917, leaving as an only heir her son, Allen. No trace of the paper above mentioned turned up after the funeral and counsel thus far known in the matter were, after consultation, of the opinion that, inasmuch as Mrs. Dillon predeceased Fuller, no cause of action would arise from the paper but it would be evidentiary in a claim for services, and the matter, to all outward appearances, seems to have rested there. Meanwhile, Mrs. Dillon's estate was being settled, $7,000 or $8,000 in personalty, with the Roanoke property. Allen, who lived in a neighboring state, was sent for by Fuller, but did not arrive until after Fuller died; this was one month after Mrs. Dillon's death. While Allen was in attendance at the funeral, Miss Gailey gave him the agreement. It is intimated she held it for an unworthy purpose and the charge was made that it was abstracted from the trunk of Mrs. Dillon at the time of her death. Miss Gailey testified the paper was in her father's possession and he gave it to her. The court below absolved her from any unworthy motive and it is unimportant in the matter now before us, except as it may have some bearing on her credibility, as she was the most important witness for the claimants. Immediately after Fuller's death, she made a written statement in Pittsburgh to counsel for the estate and the executrix; it is a fair inference something was known of the paper before Fuller's death. Payment

under the agreement was to be controverted, though counsel for the estate, immediately after Fuller's death, advised Allen that the executrix and devisee would settle a substantial sum on him; this was after Allen had the agreement in his possession. Mrs. Dillon's surmise that her claim would be resisted rested on a substantial foundation. Allen employed New York counsel, to whom the agreement was given. Consultations were held between the representatives of the New York and Pittsburgh law firms as to the proposed litigation to enforce the contract. Depositions of witnesses were taken, as were many other preliminary steps looking toward a contest; both firms were in doubt as to the method of attack.

Finally Irwin, in January, 1918, after an exhaustive study of the law, determined the agreement was binding, and that the doctrine of substantial performance could be invoked, eliminating from the contract of twenty years the services during the thirty days between the death of Mrs. Dillon and Fuller. He sent his brief, and so wrote, to the New York counsel. His contention seems sound; at any rate, a settlement between the estate and Allen was speedily thereafter arranged by the New York attorneys. They then sent to the Pittsburgh law firm, a representative, who, without disclosing the fact of settlement, stated suit would be brought on the contract in the New York courts if service could be had on the executrix, and that Allen, before he left for France, should pay a retaining fee. Irwin and Finley were asked to review, by letter to New York counsel, the work done, and to request the compensation desired. (Further comment will be made later on these letters.) Checks were sent and Irwin, becoming suspicious because of the wording in the letter accompanying his check (it practically dismissing him from the case), instituted an investigation and found settlement had been reached on the agreement at $212,000. He thereupon wrote the New York counsel demanding an explanation, and directed his representative in Fayette County to file ob-

jections to the settlement in the orphans' court, averring its unfairness and his interest in the outcome of the litigation. He also directed him to consult with the administrator.

The matter came up before Judge WORK. New York counsel and Allen were present—he did not go to France—agreeing to the settlement; Judge WORK declined to approve it and later, through the administrator, the heir received $325,000. Finley and Irwin then claimed ten per cent of this sum as compensation from the estate of Mrs. Dillon, and the court below, Judge VAN SWEARINGEN specially presiding, allowed the claim in full; hence this appeal by the heir.

Counsel who argued the case before us took no part in it until it reached this court on appeal.

Before commenting further on the testimony, it will be well to dispose of the first and most important question raised by appellant: Was Lena Gailey competent as a witness to prove her authority as an agent to contract for her deceased principal so as to charge her estate, it being contended that her interest is adverse to the decedent in that if no authority existed she might ultimately be liable on the contract? "The true test of the interest of a witness is that he will either gain or lose as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action": Braine v. Spalding, 52 Pa. 247. Miss Gailey acted as agent for a disclosed principal. She had no certain interest in the result of the litigation and the bare possibility that an action might be brought is no objection to competency. There should be a fixed vested interest, a remote or contingent interest will not answer. "It must be an interest that the judgment in the cause would operate upon, for if by the event he would neither acquire nor lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility": Wolf v. Carothers, 3 S. & R. 240; Hatch v.

Bartle, 45 Pa. 166; Dickson v. McGraw Bros., 151 Pa. 98; Abrams v. Musgrove, 12 Pa. 292; Spotts' Est., 156 Pa. 281; Sargeant v. Insurance Co., 189 Pa. 341. There is no doubt that the fruit of the labors of Finlay and Irwin was the payment of $325,000 on the contract accepted by Mrs. Dillon, and we are clearly of opinion that Miss Gailey was a competent witness to prove authority. There is no proof that she had no authority and the argument is based solely on the supposition that "if" she had no authority or "if" she exceeded her authority.

As this is an appeal from an adjudication, it must be remembered that if there is testimony which, if believed, would sustain the conclusion reached, that is the limit of our inquiry. We do not review findings of fact except to ascertain whether there is testimony to sustain them. If there is a mistake in reaching a conclusion, the burden is on the appellant to demonstrate it. Nor is it enough that it be doubtful or that it appears to be against the weight of the testimony or that we might have reached a different conclusion if we had the case to decide originally. The court below is in a better position to determine to whom credit should be given than we are: Rorabaugh's Est., 229 Pa. 377-8; Comly's Est., 185 Pa. 209, 216. This finding was reached by the court below: "In our opinion the preponderance of the credible evidence in the case is with the exceptants. In our judgment the alleged agreement has been proved by evidence that is sufficiently clear, direct and positive. And we find as a fact that there was a positive contract between the exceptants and Mrs. Dillon, the terms of which were definite and certain, to wit, that the exceptants were to receive, for the services which they have rendered, ten per cent of the amount recovered from Alfred M. Fuller's estate on the Fuller-Dillon agreement."

After a careful review of all the evidence, we are satisfied there was sufficient in the record to support this finding, and there is nothing we discover which would

so far challenge its correctness as to warrant our inter-
fering by striking it down.

Concerning the matter of the two letters written by
Irwin and Finley, it was testified by both that the let-
ters were composed at the suggestion of one of the New
York counsel, and, to a large extent, embodied his
thought; they were not intended to close the question
of fees nor to interfere in any manner with the contin-
gent agreement heretofore noted. These letters, it is
charged, practically limited the fee of Finley to $350,
and of Irwin to $1,000. The letters in themselves do not
so state and could be construed otherwise, and, in view
of the circumstances under which they were secured,
counsel were led to believe that they, as counsel, would
be continued in service in the litigation that was to fol-
low in New York and no doubt might well have had
in mind their contingent fee would not be in anywise
impaired. As a matter of fact, when the New York
lawyer was speaking, there was a settlement, and it is
charged by appellees that securing these letters was a
trick or subterfuge to get from the Pittsburgh counsel
an expression on the question of fees that might be used
against them. The court below considered all these mat-
ters, and also that Mr. Irwin immediately returned his
check for $1,000 and instituted the action heretofore
mentioned. Finley denied that his check or his letter
was a full statement of his charges; both counsel as-
serted they were in the light of retaining fees and not
conclusive compensation. Since a settlement had then
been arrived at in the sum of $212,000, Irwin and Fin-
ley, under the agreement with Mrs. Dillon, were entitled
to $21,200. It is a general rule where a dispute exists,
and the parties enter into an agreement for the purpose
of settling the dispute, they will be bound by the agree-
ment, unless there was some fraud used by one party:
Barton v. Wells, 5 Wharton 225, 226. Such settlements
are usually termed compromises. There had been no
dispute or question raised on the counsel fees at the

time the letters were written. The validity of the agreement between Fuller and Mrs. Dillon was the only matter; this being settled, there could be an accord and satisfaction based on a liquidated claim then due: 1 R. C. L. 178; but, to validate such an accord and satisfaction, there must be a proper consideration with an assent or meeting of the minds of the parties. If one of the parties to a contract, where the amount has been liquidated, wishes to abate his claim against the creditor, it must be shown the creditor understood or should have understood that he was doing so when he received the consideration named. It is not enough that there be a clear agreement or accord, and a sufficient consideration, but the accord must be executed. The plea must allege that the matter was accepted in satisfaction: Hearn v. Kiehl, 38 Pa. 147. It must appear that the matter agreed upon was in satisfaction of the debt. In other words, the other party must understand that he takes it in full satisfaction of his claim: Foye v. Lilley Coal & Coke Co., 251 Pa. 409; 1 R. C. L. 183, section 12. Claimants were entitled to $21,200 before these letters were written. It was a liquidated amount, and, had the matter gone no further as to resettlement, they would have been entitled to receive that sum of money. It was a liquidated demand, and it has long been held that the payment of the less sum, in satisfaction of the whole, would not discharge the obligation of the whole because of want of consideration, and a receipt in full has frequently been held under such circumstances to be prima facie only of an accord and satisfaction. The evidence further brings the case under Lyke v. Lehigh Valley R. R. Co., 236 Pa. 38, 48-51, as to the admission of consonant statements.

The assignments not specifically dealt with are immaterial; all are dismissed. Decree affirmed at cost of appellant.