Gaston Estate.

Argued November 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Richardson Dilworth*, with him *C. Leo Sutton, George Garrison Shafer, James C. Scanlon* and *Paxson, Kalish, Dilworth & Green*, for appellant.

*C. D. Shull*, with him *Sidney Newborg*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1949:

Rosamond Pinchot Gaston died intestate in Nassau County, N. Y., on January 24, 1938, survived by her husband, William Gaston, and two minor sons, William A. Gaston and James P. Gaston, then aged respectively nine and six years. She left an estate with a value in excess of $260,000. Her husband, William Gaston, then a resident of Maine, had by agreement entered into with Rosamond Pinchot Gaston on June 23, 1934 released all of his right, title and interest in and to her estate and also his right as husband to administer her estate. The minor sons thus became the only persons entitled to share beneficially in the estate of their mother. Gaston was appointed guardian of the estate of his two minor sons by the Probate Court of Rockland County, Maine on September 8, 1938, and was appointed ancillary guardian by the Surrogate's Court of New York County on June 10, 1939.

Amos R. E. Pinchot, the father of the decedent, was appointed administrator of her estate by the Register of Wills of Pike County, Pennsylvania, on March 5, 1938. Mrs. Gaston had spent a considerable portion of

her life in that county, where her Pinchot forebears had long resided. The administrator's first account was filed on October 13, 1941, and exceptions were filed thereto, but the audit was never concluded. The administrator died on February 19, 1944, before completing the administration of the estate. Thereafter, a second and final account was filed by the executors of the estate of Amos R. E. Pinchot, deceased administrator. Administrator's commissions were included in this account.

Exceptions were filed to the account by the guardian ad litem appointed for the two minor children. One of the exceptions was to the commissions, it being claimed that the decedent had entered into an oral contract whereby he agreed to waive his commissions, thereby enhancing the estate for the benefit of his grandchildren. The matter was referred to an auditor appointed by the court, before whom a series of hearings was held.

At the first hearing, exceptants offered William Gaston as a witness to testify to a conversation between Amos R. E. Pinchot and himself wherein the latter agreed that he would not charge any commissions if Mr. Gaston did not object to his appointment as administrator, or to the selection of Pike County, Pennsylvania, as the forum for the estate's administration. Objection was raised by the appellees to the competency of Mr. Gaston to testify about the alleged waiver by Mr. Pinchot of his commissions. The auditor sustained the objection. Her finding was that there was no waiver of commissions by the administrator.

Exceptions to the auditor's report were filed by the guardian ad litem. After argument the court below agreed with the auditor and adopted the findings. The court in its opinion added "that if the testimony of William Gaston relating to a conversation with Amos Pinchot regarding Commissions had not been excluded, we would still find that there had been no waiver of commissions. After a careful reading of the record, we

are convinced that Mr. Gaston's subsequent conduct does not corroborate the alleged conversation." This appeal followed.

The first question is whether a parent, who enters into a contract with a third party for the sole benefit of his minor children, and the third party thereafter dies, is a competent witness to testify in support of the contract for the sole benefit of the minors, against a claim made by the representatives of the deceased party's estate. The auditor at the hearing rejected the proposed testimony, her reason being that the witness was incompetent as an interested surviving party under the Act of 1887, and this ruling was upheld by the court below. This is assigned as error.

The assignment is well taken. The Act of May 23, 1887, P. L. 158, Sec. 5(e), 28 PS Sec. 322, reads as follows: "Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party. . . ."

Appellee argues that the Act disqualifies Gaston as a witness, first, because the decision in this case will directly affect his emoluments as guardian of his minor children. If the administrator is deprived of commissions, the fund administered by Gaston as guardian will be increased, thereby increasing his compensation. Second, because there is a legal duty resting on him to provide support and maintenance for his minor children. It is contended that therefore he, Gaston, has a direct pecuniary interest in the subject in controversy.

The law applicable to the instant question was stated by Justice Gibson in *Wolf v. Carothers*, 3 S. & R. 240,

as follows: "To exclude a witness, it is necessary that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility." See also *Hatch v. Bartle*, 45 Pa. 166; *Dickson v. McGraw Bros.*, 151 Pa. 98, 24 A. 1043; *Abrams v. Musgrove*, 12 Pa. 292; *Dillon's Estate*, 269 Pa. 234, 111 A. 919.

This Court also said in *Braine v. Spalding*, 52 Pa. 247: "The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent: Greenleaf's Ev., vol. i, § 390."

By no finding of the court below could the witness Gaston have acquired a "present, certain and vested interest" in the "subject in controversy". His relationship is not sufficient to make his interest adverse to that of the deceased administrator.

The fact that William Gaston might sometime in the future profit pecuniarily if it was judicially found that what he testified to was true, does not render him incompetent as a witness although it should be considered by the adjudicating tribunal in passing upon his credibility and weighing the probative value of his testimony. For example, suppose A and B entered into a verbal contract in the presence of A's grandson, Y, and A dies and his property is inherited by Y's father, X. The fact that the grandson's testimony if credited would tend to increase the value of A's estate would not render Y incompetent as a witness. He would have no "present, vested and certain interest in the subject in controversy", although as the legal heir of X he might

sometime inherit a portion of X's estate. On the other hand X might dissipate his entire estate or he might make a will under which his son, Y, would be given nothing. So, in the instant case, Gaston might, as a matter of fact, be removed as guardian of his children and might be awarded no compensation for his services at the time of his removal. Even if it is certain that he would be compensated as guardian of his children, that fact does not affect his competency as a witness, in behalf of his children's interest.

In *Doty's Adm'r., v. Doty's Guardian,* 118 Ky. 204, 208, 80 S. W. 803, there was a situation in which the principle herein involved was applied in such a way as to make it appropriate for citation here. A man and woman, although unmarried, lived together and she bore him a child. She and the child left the man's habitation and then returned on the promise of the man to give a certain amount of land to the child. After the man's death the child, by his mother, as guardian, brought suit for conveyance of the land. In Kentucky a guardian is personally liable for costs accruing during the prosecution of an action conducted by him. A subsequent amendment to the statute, however, restricts his liability to the funds in his hands. A statute also provides a guardian shall be allowed by the court a reasonable compensation for his services. The competency of the guardian to testify as to the contract between her and the deceased was challenged. The court, in overruling the challenge, said: "It is insisted for appellants that she is testifying for herself as to a transaction with one who is dead, and is therefore incompetent under section 606 of the Civil Code, for the reason that she is liable for the costs of the action, and is entitled to compensation for her services as guardian. . . . She is entitled by law to a reasonable compensation for her services, but is given no right to any part of the fund recovered. Her trust may be terminated before any part of it comes to her hands. . . . Her

right to a reasonable compensation for her services was insufficient to disqualify the witness. For she was entitled to the allowance for her services whether the case was won or lost. Her interest was not directly in the result of the action, although the ward's estate might be able to pay her if the suit was won, and unable to pay if it was lost. This indirect interest in the recovery went to her credibility, and not to her competency. Were the rule otherwise, no person holding a claim could testify for the debtor as to the acts of one who was dead when the testimony was given." In the instant case, also, the challenge as to the testimonial competency of the guardian, William Gaston, should have been overruled.

The opinion of the court below contains the following statement: "We would add that if the testimony of William Gaston relating to a conversation with Amos Pinchot regarding Commissions had not been excluded, we would still find that there had been no waiver of commissions. After a careful reading of the record, we are convinced that Mr. Gaston's subsequent conduct does not corroborate the alleged conversation." The "subsequent conduct" which the court refers to consists apparently of the fact that from early in February, 1938 until September, 1941 Mr. Gaston "sat by and said nothing to anyone about the alleged waiver and this silence persisted though both formally and informally Mr. Pinchot went on record, from the very beginning of his administration, that he was claiming the right to commissions." Appellee points out that the record shows that Mr. Pinchot disclosed to Mr. Gaston the fact that he, Pinchot, was going to claim administrator's fees and Mr. Gaston made no objection. Mr. Gaston testified: "I had never known how much [were the fees claimed] until the time of the original accounting where they appeared . . . as 5 per cent." Mr. Gaston testified further that Sidney Newborg, attorney of the State of New York, said that "Amos would be willing to accept 3½ per cent instead of 5 per cent." Mr. Gaston objected

to that saying: "I did not think he was entitled to get anything on account of our agreement. Mr. Newborg said Amos denied having made that agreement with me. I said Amos was a damned liar, that he had made the agreement."

We are not called upon in this appeal to decide whether or not the claim of Amos Pinchot for administrator's fees is well founded in fact or in law or whether he had waived all his claim to administrator's fees as contended by Gaston. The above-quoted statement as to what would still be the finding if Gaston's testimony had not been excluded has no bearing on the question of the admissibility of Mr. Gaston's testimony. Since he was a competent witness it was the duty of the tribunal to hear him. He might have impressed the tribunal with the truthfulness of his testimony. Any competent witness is entitled to be heard if he can offer competent testimony which is relevant and material to the issue trying. We said in *Kirshon et ux. v. Friedman,* 349 Pa. 171, 181, 36 A. 2d 647: "It is an elementary principle that in considering the credibility of witnesses, their manner of testifying, their apparent candor, intelligence, personal interest and bias or lack of it, are to be considered in determining what weight shall be given to such testimony." See also *Belmont Laboratories, Inc., v. Heist et al.,* 300 Pa. 542, 151 A. 15, and *Jones v. Motor Sales Co. et al.,* 322 Pa. 492, 185 A. 809. 70 C. J. Sec. 952 makes this statement: "In determining the weight to be attached to the testimony of a witness it is proper to consider his appearance, general bearing, conduct on the stand, demeanor, manner of testifying, such as candor or frankness, or the clearness of his statements, and even the intonation of his voice. So the positiveness of the witness, as well as his uncertainty as to the facts as to which testimony is given, may be considered." See also 28 R.C.L. Sec. 243, which says: "The mental condition of a witness as manifested by him on the witness stand almost invariably influences

the jury as to the weight they will give his testimony. The manner in which a witness tells his story; the advantages he appears to have had for gaining accurate information on the subject; the accuracy and retentiveness of his memory; his capacity for consecutive narration of acts and events; his apparent frankness and intelligence, and numerous other considerations—all go to make up the sum total of credibility that the jury will give to the evidence of any particular witness." This principle is apposite to the case now under review for it is just as applicable when an auditor or a judge, instead of a jury, acts as trier of the facts.

The decree is reversed with a procedendo.