## Haase Estate

*Cassin W. Craig* and *Daniel M. Rendine*, for exceptant.

*D. Stewart McElhone, Joseph L. McGlynn, Jr.*, and *John B. Brumbelow*, contra.

TAXIS, P. J., November 9, 1961.—Charles Haase, also known as Charles S. Haase, Charles Hess, and Solly Haase, died on October 12, 1959, leaving a will dated April 16, 1956, duly probated on December 12, 1959, on which the present letters were granted to the accountant, who was appointed sole executrix. . .

There was presented at audit a claim by the estate of Henrietta Haase, deceased, who was decedent's first wife, to one-half of the issued and outstanding stock of a corporation known as Sunken Gardens, Incorporated, which operates a restaurant and liquor business in Cheltenham Township. According to the statement filed, the claim is based wholly upon an agreement between decedent and the executors of the claimant estate, dated November 9, 1956.

In that agreement, the said executors assumed one-half of the obligation of a certain mortgage debt to Tradesmens Bank and Trust Company upon which, at the time, Charles Haase was wholly liable. Other provisions relating to the ownership of the Sunken Gardens business followed, and in paragraph 4 there appears the following language, which gives rise to the present claim:

"4. That in the event of the death of the party of the first part, CHARLES HAASE, it is agreed and understood that the parties of the second part shall have a one-half (½) ownership of said business and that this Agreement shall be binding upon the heirs and personal representative of the party of the first part, and further, the personal representative of the party of the first part shall have the option of buying out the interest and rights of the parties of the second part, and if same is not feasible, the said business and ground shall be put up for sale and the parties of the second part shall be entitled to receive one-half (½) the proceeds of the sale of said business and land located thereon."

In a post-nuptial agreement dated April 20, 1955, decedent had vested in his former wife a one-half interest in the Sunken Gardens real estate, retaining, however, the right to mortgage the same up to $75,000, for which mortgage debt, if placed, he would be solely liable. Subsequently, under this provision, the premises were mortgaged for $50,000, and it is one-half of this mortgage that was assumed by the executors of the Henrietta Haase estate as related above, when Charles Haase found it impossible to carry.

On April 28, 1955, decedent and Helen M. Cary and Frank W. Cary, entered into a pre-incorporation agreement for a corporation to be known as "Sunken Gardens, Incorporated." In this they agreed that "no party to this agreement shall sell, exchange, assign, give as security, hypothecate or in any manner release title or possession of the said stock issued to them, except to each other," and that the "stock certificates shall contain on the face thereon an appropriate notice of the terms of this agreement." The parties also agreed to carry these provisions into the corporate by-laws at the first meeting. The Carys failed to perform

certain other provisions of the pre-incorporation agreement, and their stock was reacquired by decedent. Decedent's second wife, Esta Haase Salmon, as his nominee, became the record owner of three shares and decedent of 297. There are no other shareholders.

A portion of the Sunken Gardens real estate has been sold, and the mortgage satisfied of record from the proceeds. The balance of the proceeds was divided equally between decedent and the Henrietta Haase estate.

The defense of the claim, therefore, is based simply upon the pre-incorporation agreement, which, it is contended, effectively prevented decedent from transferring any interest in his stock. Preliminarily, it must be noted that there is no assertion that an inter vivos transfer of the stock was made. There is thus no issue as to whether the failure to deliver the certificates is an operative fact; nor can there be any contention that the claimants were bona fide purchasers for value, since the restriction on transferability was noted on the face of the certificates.

The principal issue therefore is whether or not the pre-incorporation agreement, restricting the transferability of the stock, is enforceable against the claimants. There is no doubt that a by-law or contract, conferring a first option on either a corporation or some or all of its shareholders to purchase stock when another shareholder wishes to sell, is valid: Fitzsimmons v. Lindsay, 205 Pa. 79. Such provisions are universally viewed as reasonable "ground rules" in the management of corporations, especially those of the small, closely held type. On the other hand, unqualified restrictions upon the alienation of property are not permitted, and although much of the authority in Pennsylvania for this rule relates to real estate (see Grossman v. Hill, 384 Pa. 590), the reason for it

renders it fully applicable to personal property, and it has been so held in North Pennsylvania Power Company v. Pennsylvania Public Utility Commission, 333 Pa. 265, and in Commonwealth v. Lombardo, 356 Pa. 597. A permanent and unconditional restriction on the alienation of property is repugnant to long established public policy, and utterly inconsistent with the concept of "ownership" as it exists and operates in the law.

It is into the latter classification that the restriction in question fails. By its terms, it is not an option, if the other shareholders do not choose to buy, the stock cannot be sold, nor can it be transferred in any other fashion if they do not deign to permit it. There is no alternative right to sell if an option is not exercised, nor is there any time limit whatever upon the restriction, and it is these facts which distinguish this case sharply from Garrett v. Philadelphia Lawn Mower Company, 39 Pa. Superior Ct. 78.

Counsel for the estate, in his supplemental memorandum of law, argues skillfully under Garvin's Estate, 335 Pa. 542, that it is not permissible to interpret a by-law so as to render it void, when some other construction is possible. Thus, it is claimed, this provision may be construed as a preferred right to purchase by way of option, carrying with it a consequent right to sell if the option is not taken up within a reasonable time. This contention, however, flies in the face of the plain language used in this case, which is not that of an option, or a conditional right to sell or otherwise transfer, but rather of a clear and absolute restriction upon alienation. There is no evidence (and no claim) of any accident or error or fraud, which would have to be present under well settled principles to justify this court in changing the meaning of these plain words by a reformation of the contract.

Moreover, the inescapable fact of the owner's death now requires some sort of transfer; the shares are not to be buried with him. Would it not be illogical to deny his right to transfer his interest upon his death by a contract executed during life, but at the same time allow him, as the estate claims, to transfer it by a will, also executed during life? I hold, therefore, that the provisions of the pre-incorporation agreement restricting the transfer of the stock in question are illegal and unenforceable against the claimants.

A further issue exists, however, in regard to the proof of the claim itself. The estate contends that the testimony of Filmore S. Harowitz (one of the executors of the estate of Henrietta Haase), by which the execution of the agreement of November 9, 1956, was proved, is inadmissible under the provision of the Dead Man's Act of May 23, 1887, P. L. 158. It could well be held from the record that counsel for the accountant agreed to the admission of this testimony when he stated, "If it is just to present the agreement, we have no objection." Leaving this aspect of the matter to one side, however, it still appears that the testimony of Mr. Harowitz is admissible. The statute in question, in order to disqualify, requires not only that the proposed witness be a surviving party to the transaction, but also that his interest be adverse to that of decedent or his legal successors. In this connection, it is clear that a personal representative as such, having a legal but not a beneficial or equitable interest in a matter, is not disqualified from testifying by the statute in question: Groome's Estate, 337 Pa. 250. In Gaston Estate, 361 Pa. 105, the Supreme Court specifically considered the argument that a fiduciary's interest in increasing his commissions should be sufficient to disqualify, but rejected the contention, holding that to be excluded, a witness must have an interest

"that the judgment in the cause would operate upon . . . ." Under this view, Mr. Harowitz was properly permitted to testify.

It has been contended that the transfer of a "one-half (½) ownership of said business" does not describe stock as such, and that therefore the claim thereto must be limited to monetary damages, if otherwise allowable. If, however, the language quoted is to have any meaning at all, it must be taken to refer to the Sunken Gardens stock, as the business had a corporate form on November 9, 1956. In this connection, "business" cannot be taken as more than a word of general description, and this view is substantiated by Gerlach Estate, 364 Pa. 207, which treats the distinction sought to be drawn here as a "slight and immaterial" change in form.

In accordance with the foregoing opinion, the claim of Charles Haase, Jr. and Filmore S. Harowitz, as executors of the estate of Henrietta S. Haase, deceased, to 150 shares of Sunken Gardens, Incorporated is hereby allowed in full, and is awarded the claimants.

. .

And now, November 9, 1961, this adjudication is confirmed nisi.

### Opinion Sur Exceptions

TAXIS, P. J., February 1, 1962.—The adjudication in this estate sustained the claim of the estate of Henrietta S. Haase, deceased, to 150 of the 300 outstanding shares of a corporation known as Sunken Gardens, Inc. Eight exceptions have been filed to this conclusion on behalf of Esta T. Haase Salmon, widow of decedent. . . .

In exceptions nos. 1-4, nothing new of substance has been raised. As discussed in detail in the adjudication, the language used in the 1955 agreement, barring the sale or transfer of the stock, is plain and direct, and

admits of no ambiguity. Although the law permits some conditions to be imposed upon the sale of stock, especially that of small, closely held corporations (see Garrett v. Philadelphia Lawn Mower Company, 39 Pa. Superior Ct. 78), no reported case has upheld a permament and unconditional bar such as the one under consideration. As to contention that this court may construe this illegal agreement as less restrictive and therefore legal, so as to preserve some fragment of its alleged meaning, suffice it to say that that there is nothing relating to the execution of this agreement indicating that the parties to it intended to provide other than exactly as they did. It is interesting to note, in passing, that when the agreement of 1956 was entered into, the other incorporators had failed to pay in their share of the capital at Sunken Gardens, Inc., and decedent had consequently become the sole owner of the corporation. In this situation, the restriction on transfer or sale could have operated only for his benefit, since the entire corporation was his; if he chose to waive such benefits as it conferred, there is no inequity in upholding his action to the detriment of a party who can claim nothing in this estate except that which she can obtain derivatively from the decedent. As aptly put in the brief for the exceptant, "In a very real sense the primary purpose of . . . the pre-incorporation agreement was to enable a particular party, the corporation, or its other shareholders to buy the shares, not to prevent the other party, the stockholder, from selling them." . . .

Exception no. 6, likewise, raises nothing basically new. It is argued that the claim should be limited to money damages, if allowed, and that the measure should be one-half of the value of the Sunken Gardens stock at the date of decedent's death. This argument, however, is based upon the premise that the 1956 agreement prevented decedent from transferring or in

114

any way affecting the stock itself. Since this contention has been disposed of otherwise, that agreement must be enforced as made, and the claim allowed.

Exception nos. 7 and 8 require no discussion. The court is aware that the exceptant, decedent's widow, is instrumental in the successful operation of this business. The court also recognizes that the distribution of precisely one-half of the outstanding stock leaves no one with a controlling interest, which is often a completely unsatisfactory and unworkable state of affairs. When decedent, however, in paragraph 4 of the 1956 agreement, gave his personal representative (exceptant here) "the option of buying out the interest and rights" of the claimant, he pointed out a reasonable route of escape from the horns of this dilemma.

Exceptions nos. 1-8 of Esta T. Haase Salmon are dismissed. . . .