536 A.2d 458

In the Matter of: James Paul Kulbitsky, a/k/a Kubi Kulbitsky. Theresa Kulbitsky, Appellant.

Submitted on briefs November 19, 1987, to Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Lester Krasno*, with him, *Michael D. Alsher, Krasno & Krasno*, for appellant.

*Robert A. Graci,* Chief Deputy Attorney General, with him, *Richard W. Sponseller,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for appellee.

OPINION BY JUDGE CRAIG, January 12, 1988:

Theresa Ann Kulbitsky appeals an order of Judge WILBUR H. RUBRIGHT of the Court of Common Pleas of Schuylkill County denying Ms. Kulbitsky's motion for return of property and granting the request of the Commonwealth of Pennsylvania for forfeiture.

The issues raised by the appellant are: (1) whether, with respect to a motorist killed in a traffic accident, the common pleas court should have applied the statutory "dead man's rule" of evidence in civil cases to bar testimony in a forfeiture proceeding by state police officers and technicians regarding drugs and money found in the motorist's jacket recovered from the scene of the accident; (2) if the evidence was admissible, whether it was sufficient to justify an order of forfeiture; and (3) whether, where the Commonwealth did not file a request for forfeiture until some five months after the property was seized (and after Ms. Kulbitsky filed her motion for return of property), the Commonwealth failed to comply with the statutory requirement that proceedings for forfeiture be instituted "forthwith" after a seizure without process, and so violated Ms. Kulbitsky's right to due process of law.

The testimony at the hearing before Judge RUBRIGHT indicated that on April 29, 1986, James Paul Kulbitsky was killed when the pickup truck he was driving ran into the rear of a tractor trailer. A state trooper investigating the accident found no identification on the decedent; however, the trooper found that a jacket recovered from the pickup truck contained a large amount of money in an inside pocket. The trooper secured the

jacket in his cruiser and examined it when he returned to his barracks.

The money in the jacket totalled nearly $12,000. Another inside pocket of the jacket contained a leather pouch, which in turn contained a plastic bag, measuring approximately five inches by ten inches, with a small amount of white powder at the bottom and residue on the sides. The pouch also contained a small amount of suspected hashish wrapped in foil and a small amount of suspected marijuana. Later chemical analysis indicated that the white powder was methamphetamine, and the other substances were, in fact, hashish and marijuana. The state police also recovered approximately $260 from the decedent's pants.

A trooper qualified as an expert in the drug trade testified at the hearing that the plastic bag containing the methamphetamine probably had been full at one time, based on the presence of residue throughout the inside, and that it would hold as much as a pound of the drug, which would have sold for approximately $11,000. Counsel stipulated that the decedent had two previous convictions for possession of controlled substances with intent to deliver, including those substances involved in this case.

Theresa Kulbitsky, administratrix of the estate of the decedent, testified that she was married to him at the time of his death, although they had been separated for four years. She said that the decedent gave her $200 to $300 per month throughout the period of their separation for the support of their children. Further, she said that he owned two businesses, although she did not know the amount of income generated by them. She had seen the decedent carry thousands of dollars on come occasions, and she had seen him in possession of hashish, although usually not in large quantities.

Ms. Kulbitsky filed a motion pursuant to Pa. R. Crim. P. 324 on September 3, 1986, for the return of $12,169 held by the state police. The District Attorney's office of Schuylkill County filed an answer to that motion on September 24, 1986. The answer raised as new matter a request that the money be forfeited to the Commonwealth pursuant to section 28 of the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P. L. 233, *as amended,* 35 P.S. §780-128. After a hearing on October 14, 1986, Judge RUBRIGHT issued the order described above, and Ms. Kulbitsky appealed.

## 1. Dead Man's Rule

The so-called "dead man's rule" is codified at 42 Pa. C.S. §5930. It provides in pertinent part as follows:

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of said party . . . .

Appellant contends that the "adverse interest" branch of this rule should have been applied by the trial court to bar the testimony of the police officers. Ms. Kulbitsky argues first that the dead man's rule applies in forfeiture proceedings, contrary to the ruling of the trial court on her preliminary objection raising this issue, because such proceedings remain civil in form, and the

civil rules of evidence (including the dead man's rule) apply to them, despite the fact that the courts have recognized that such proceedings are quasi-criminal in character. The Commonwealth responds that the quasi-criminal nature and effect of forfeiture proceedings renders the rule inapplicable.

The characterization of forfeiture proceedings in Pennsylvania remains as set forth in *Commonwealth v. Landy*, 240 Pa. Superior Ct. 458, 362 A.2d 999 (1976), a decision affirming the denial of a motion pursuant to Pa. R. Crim. P. 324 by a person arrested and charged with various drug offenses for return of money confiscated at the time of his arrest after the indictments against him were dismissed:

> In light of both the history of forfeiture actions and recent Supreme Court cases involving forfeiture, we conclude that the forfeiture proceedings under §780-128 of The Controlled Substance, Drug, Device and Cosmetic Act are civil in form, but quasi-criminal in character. The clear object of §780-128 is to impose a penalty only upon those who are significantly involved in criminal enterprises in violation of the Act. See §780-128(a)(1), (2), (3), (4), (5). See also United States v. United States Coin and Currency, [401 U.S. 715 (1971)]; One 1958 Plymouth Sedan v. Pennsylvania, [380 U.S. 693 (1965)]. We do not, on the other hand, classify these proceedings as 'criminal proceedings' so as to require the full panoply of rights due a criminal defendant. *On issues of evidence, such proceedings should be treated as civil proceedings with the Commonwealth having the burden of proving the material allegations by a preponderance of the evidence only.*

*Landy*, 240 Pa. Superior Ct. at 469-70, 362 A.2d at 1005 (emphasis added and footnote omitted).

Thus, *Landy* clearly held that civil case rules of evidence apply in forfeiture proceedings. The dead man's rule is designed to prevent the injustice that would result from permitting the surviving party to a transaction, or one with an interest in particular property adverse to that of the decedent, to testify favorably to himself and adversely to the decedent when the decedent's representative would be hampered in attempting to refute the testimony by reason of the decedent's death. *Visscher. v. O'Brien*, 274 Pa. Superior Ct. 375, 418 A.2d 454 (1980). In view of the reduced burden of proof placed on the Commonwealth in forfeiture proceedings, as compared with criminal proceedings, a rule generally protective of defendants, such as the dead man's rule, is appropriate in forfeiture proceedings. Therefore, we hold that the dead man's rule applies to this proceeding, although application of the rule will not necessarily result in the exclusion of testimony on behalf of the Commonwealth.

Ms. Kulbitsky next argues that the dead man's rule should operate to render incompetent the Commonwealth's witnesses because their interest was adverse to that of the decedent within the meaning of the rule. On this point her argument fails.

In the case of *In re Hendrickson's Estate*, 388 Pa. 39, 130 A.2d 143 (1957), the Pennsylvania Supreme Court provided criteria still used to determine disqualifications of witnesses under this rule. Interpreting the former, substantially identical, version of §5930, the court stated:

> Under this exception [to the general rule that witnesses are competent] three conditions must exist before any such witness is disqualified: (1) *the deceased must have had an actual right or interest in the matter at issue,* i.e. an interest in the immediate result of the suit; (2) *the inter-*

*est of the witness—not simply the testimony— must be adverse; (3) a right of the deceased must have passed to a party of record who represents the deceased's interests.*

Hendrickson's Estate, 388 Pa. at 45, 130 A.2d at 147-48 (emphasis in the original and footnotes omitted). The court elaborated on the standard for determining the adverse interest of a witness in a footnote:

In [In re] Dillon's Estate, [269 Pa. 234, 111 A. 919], a test is suggested to determine whether an interest is adverse: will the witness gain or lose as the direct legal operation and effect of the judgment, or will the record be legal evidence for or against him in some other action? If not, he is competent. See also the excellent discussion of this matter in Gaston Estate, 361 Pa. 105, 62 A.2d 904.

Id. at 45 n.6, 130 A.2d at 147 n.6. The courts repeatedly have applied this test to determine whether a witness had an adverse interest. See, e.g., In re Gelb's Estate, 425 Pa. 117, 228 A.2d 367 (1967).

The interest of the state police witnesses in this case was not adverse under the test just described. Those witnesses would not receive any property forfeited to the Commonwealth. Although those witnesses testified for the Commonwealth, they would not gain or lose personally by the direct legal operation and effect of a judgment of forfeiture. For this reason alone, the dead man's rule would not bar the testimony of the Commonwealth's witnesses.

Another reason that the dead man's rule would not bar the testimony sought to be excluded here is that the rule by its own terms applies only to testimony regarding matters that occurred before the death of the decedent. Here the police witnesses had no dealings with the decedent before his death. Their testimony con-

cerned matters discovered *after* the decedent's death,
namely, the presence of drugs and money in his jacket
after the accident. The testimony of the officer qualified
as an expert in the drug trade regarding the likelihood
that the decedent had sold a pound of methampheta-
mine before his death was in the form of expert opinion
based on facts developed after the decedent's death, not
in the form of the assertion of facts based on personal
knowledge gained before the death.

The dead man's rule, although applicable to forfei-
ture proceedings, does not operate to render the wit-
nesses presented by the Commonwealth in this pro-
ceeding incompetent to testify, or to exclude any por-
tion of their testimony.

### 2. Sufficiency of the Evidence

Section 28 of the Controlled Substance, Drug, De-
vice and Cosmetic Act, 35 P.S. §780-128, provides in
pertinent part:

(a) The following shall be subject to forfei-
ture to the Commonwealth and no property
right shall exist in them:

. . . .

(6)(i) Consideration as follows:

(A) Money, negotiable instruments, securi-
ties, or other things of value furnished by any
person in exchange for a controlled substance in
violation of this act.

(B) Proceeds traceable to such an exchange.

. . . .

(ii) . . . . *Such money and proceeds found
in close proximity to controlled substances pos-
sessesd in violation of this act shall be rebut-
tably presumed to be proceeds derived from the
selling of a controlled substance in violation of
this act.* (Emphasis added.)

The Commonwealth's witnesses testified that most of the $12,169 at issue in this case was found in the same jacket with controlled substances, and the rest was on the person of the decedent in the cab of the pickup truck along with the jacket. No evidence was introduced tending to show that the decedent's possession of the controlled substances was lawful. Under these circumstances the Commonwealth has the benefit of the rebuttable presumption provided in section 28(a)(6)(B)(ii).

Beyond the effect of the presumption, the Commonwealth presented evidence tending to prove that the decedent likely had in his possession at some time before the accident approximately one pound of methamphetamine and that the proceeds of the sale of such an amount of that drug would correlate closely with the amount of money recovered by the police after the accident.

In response to this evidence, Ms. Kulbitsky testified only that her husband operated legitimate businesses that might have been the source of the money; however, she made no further attempt to establish any particular legitimate source. In our view, the trial court's conclusion that the money was contraband subject to forfeiture under section 28 was more than supported by substantial evidence.

### 3. Timeliness of the Request for Forfeiture

Ms. Kulbitsky's final argument for overturning the judgment of the trial court is that the Commonwealth's request for forfeiture, filed some five months after the seizure of the money and in response to the appellant's motion for return of property, deprived her of due process of law because it was not filed "forthwith" as required by section 28(c) of the Controlled Substance,

Drug, Device and Cosmetic Act, 35 P.S. §708-128(c), which provides:

> (c) In the event seizure without process occurs, as provided herein, proceedings for the issuance thereof shall be instituted forthwith.

This claim is controlled by our court's consideration of the meaning of this subsection in *Commonwealth v. One 1976 Oldsmobile Cutlass Supreme*, 85 Pa. Commonwealth Ct. 433, 482 A.2d 686 (1984). In that case this court reversed a decision of the court of common pleas that concluded that seizure of an automobile in connection with an arrest for drug offenses and forfeiture was proper, but that ordered return because the court deemed the 82-day delay in the Commonwealth's filing its petition for forfeiture to violate the defendant's due process rights. This court considered its interpretation of section 28(c) to be a case of first impression; it explained its reversal as follows:

> This Court has previously defined the term 'forthwith' as it was used in the Vehicle Code. 'We never have construed the "forthwith" requirement to fix an arbitrary time limit; rather, we have held that . . . compliance within a reasonable time is sufficient.' Department of Transportation, Bureau of Traffic Safety v. Passerella, 42 Pa. Commonwealth Ct. 352, 354, 401 A.2d 1, 2 (1979). '[A]bsent a showing of prejudice, the mere passage of time . . . is not sufficient justification to set aside the action . . . .' Department of Transportation, Bureau of Traffic Safety v. Lea, 34 Pa. Commonwealth Ct. 310, 312, 384 A.2d 269, 270-71 (1978). We find this definition equally applicable here.

*One 1976 Oldsmobile Cutlass Supreme*, 85 Pa. Commonwealth Ct. at 435, 482 A.2d at 687-88 (footnote omitted).

Elaborating on the prejudice standard, the court stated:

> The prejudice which [the car's owner] claims is the loss of the use of his car but, as we said in One 1965 Buick 4 Door Sedan v. Commonwealth, 46 Pa. Commonwealth Ct. 189, 191, 408 A.2d 157, 158 (1979), 'that is the same "prejudice" suffered by every person that uses his car to facilitiate [sic] illegal drug activity. Moreover, such "prejudice" is . . : solely a result of . . . illegal use of the car.'

*Id.* at 436, 482 A.2d at 688 (footnote omitted).

Under the unusual circumstances of this case, with the only obvious claimant of the confiscated money killed in the accident that resulted in the confiscation, the Commonwealth's delay in requesting forfeiture until someone came forward seeking return of the money was not unreasonable.

The prejudice asserted by Ms. Kulbitsky is loss of support for her and her two small children because they were partially dependent on the decedent's monthly contributions. However, this claim of prejudice from the loss of use of money is no different from the claim of prejudice from loss of use of the car asserted in *One 1976 Oldsmobile Cutlass Supreme*.

More importantly, Ms. Kulbitsky has not shown any prejudice in the sense of an adverse effect on her ability to attempt to establish her rights in the money caused by the Commonwealth's delay, for example, by the disappearance of a key witness. Therefore, we conclude that Ms. Kulbitsky has not demonstrated the prejudice caused by the delay in requesting forfeiture that this court requires as a basis for finding that due process rights were violated.

Accordingly, we affirm the order of the court of common pleas directing that the $12,169 at issue here be forfeited.

488

ORDER

Now, January 12, 1988, the order of the Court of Common Pleas of Schuylkill County at No. 112 Misc. 1986, dated October 1, 1986, is affirmed.